Terence Maxwell, Jr., Appellant, v City of New York, Respondent.

First Department, April 19, 1990

## APPEARANCES OF COUNSEL

*Paul F. McAloon* of counsel *(Blauman & McCabe,* attorneys), for appellant.

*Kristin M. Helmers* öf counsel *(Stephen J. McGrath* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

MILONAS, J.

■ ■ This action is for damages for false arrest and malicious prosecution. Plaintiff Terence Maxwell, Jr. herein appeals from a reversal by Appellate Term of a judgment of the Civil Court, Bronx County, following a jury trial, which awarded him the amount of $175,000 plus interest and costs. The Appellate Term granted the motion by the City of New York for judgment notwithstanding the verdict and dismissed the complaint. According to that court, "even viewing the evidence most favorably to the plaintiff who prevailed at trial, the evidence was sufficient, as a matter of law, to establish that defendant City of New York had probable cause to arrest plaintiff". While we agree with the determination that probable cause existed to arrest defendant, and, therefore, the cause of action for false arrest cannot stand, the proof educed at trial is, contrary to the opinion of the Appellate Term, adequate to support the finding in plaintiff's favor with respect to the cause of action of malicious prosecution.

It is uncontested that plaintiff was innocent of the charges of which he was accused. The police initially alleged that he was 1 of 4 perpetrators of an armed robbery in the Hunts Point Market in The Bronx during which two armed guards of the Purolator Company were seriously injured. The investigation into the incident was headed by Detective John Fitzpatrick, a 28-year veteran of the police department. He learned that four men, wearing stocking masks, had shot and robbed the two guards as they were collecting the daily receipts from various businesses at the market. While the crime was in progress, three men had inadvertently walked in on the scene and were taken hostage. Later, one of the hostages, who had gotten a glimpse of two of the perpetrators without their masks, picked out a picture of Dwayne Wallace from a photographic array. In addition, three other witnesses to at least part of the incident were interviewed, among them two prostitutes, Tamika White and Leola Gray, and, on the basis of

their identifications, Kevin Anderson was arrested. A third man, Gilbert Lawrence, was arrested when a prescription bottle left at the scene of the crime was traced to him. Lawrence's arrest was followed by the arrest of one Rodney Anderson, who had been identified from a photograph, but he was released when he was not identified in an ensuing lineup. Wallace was arrested after his photograph was identified by White, Gray and another witness, and he was subsequently picked out of a lineup by one of the hostages. Thus, a week following the commission of the robbery on June 11, 1981, three suspects were under arrest and a fourth was being sought.

■ At the time of Lawrence's arrest on June 15, 1981, both Patrina Brown, Lawrence's girlfriend, and her friend, Pat Brunson, who had once dated plaintiff, advised police to search for a person named "Terry" who worked for Consolidated Edison and lived on Colgate Avenue. Detective Fitzpatrick stated that Brown and Brunson further claimed that if Lawrence was involved in the robbery, then so was "Terry". At some point, the police purportedly decided that plaintiff was the individual referred to as "Terry", an assumption buttressed by plaintiff's attempt to visit Lawrence, his childhood friend, in jail. Moreover, when the witnesses were shown a photographic array, Tamika White unhesitatingly selected plaintiff's picture. Accordingly, the police believed that they possessed sufficient information upon which to arrest plaintiff. He was arrested on June 24, 1981 and arraigned the next day in Bronx Criminal Court. The court ordered that he be held in custody, without bail, pending further action by the Grand Jury. Plaintiff voluntarily appeared before the Grand Jury on July 1, 1981, and the Grand Jury voted not to indict him. In all, plaintiff remained incarcerated for 24 days for a crime which he clearly did not commit. Yet, in arresting plaintiff, the police, as correctly found by the Appellate Term, "reasonably relied upon a positive pre-arrest identification of plaintiff made by a civilian witness from a photograph array as well as a positive corporeal identification of plaintiff independently made by that witness and another civil witness during a lineup identification within a few hours after plaintiff's arrest." Therefore, the Appellate Term properly concluded that the police had probable cause to arrest plaintiff as a matter of law, and it was error to submit that question to the jury and also to deny defendant's motion for judgment notwithstanding the verdict on the false arrest cause of action.

■ There is, however, merit to plaintiff's contention that the claim for malicious prosecution was sufficiently demonstrated by the evidence. In that regard, Detective Fitzpatrick, despite testifying that plaintiff's arrest was the result of his having been identified as one of the perpetrators by Tamika White through a photographic array and by White and Leola Gray in a lineup, as well as due to other circumstantial information, did not recite any of these facts in his felony complaint. Instead, he swore in the complaint that:

"Deponent states that he is informed by William Walker that * * * defendant acting in concert with three others previously apprehended, did unlawfully * * * steal certain property, from the informant * * *

"Deponent is further informed by one William Walker [that defendant acted in concert to shoot Walker] * * *

"Deponent further states that he is informed by the informant".

A second sworn complaint was also filed by Detective Fitzpatrick in which he asserted that:

"Deponent states that he is informed by Raymond Talleur that * * * defendant acting in concert with three others previously apprehended * * * did unlawfully * * * steal certain property from the informant * * *

"Deponent is further informed by Raymond Talleur * * *

"Deponent further states that he is informed by the informant".

William Walker and Raymond Talleur were the two armored car guards. It is undisputed that Detective Fitzpatrick did not speak with Walker until some four months after making the foregoing representations and never talked with Talleur. Neither man ever identified plaintiff as one of the robbers to any police officer. Indeed, the statements made by Detective Fitzpatrick were a complete fabrication and not merely an inadvertent clerical error since Detective Fitzpatrick certainly had to have known which persons he interviewed. At the arraignment, the Assistant District Attorney simply relied upon the information contained in the felony complaints, and, in fact, at trial, he conceded that if Detective Fitzpatrick had never spoken with Walker and Talleur, then the complaints would be not only inaccurate put perjurious. The prosecutor also admitted that he would not have proceeded with the case had he known that the complaints were predicated upon perjured allegations.

■ It should be pointed out that plaintiff was exonerated of the accusations against him when an investigation revealed that on the day of the crime, plaintiff, an employee of Consolidated Edison since 1974, was in the midst of a vacation. Although June 11th was a Thursday, and his paycheck was expected on Friday, Con Edison staff were permitted to pick up their check after 2:30 P.M. on Thursday if they were not scheduled to work on Friday. Plaintiff telephoned William Berezuk, the payroll supervisor, to alert him to the fact that he intended to stop in for his check. Berezuk put plaintiff's check aside, and plaintiff arrived shortly after 2:30 P.M. Berezuk had known plaintiff since he began working for Con Edison. In any event, plaintiff took his paycheck and walked to a Chemical Bank branch at 42nd Street near Third Avenue in Manhattan, where he endorsed and cashed the check. The time stamped on the canceled check was 2:58 P.M., June 11, 1981. Moreover, the endorsement was identified as that of plaintiff. The robbery occurred at 3:30 P.M. in the Hunts Point Market in The Bronx. As for the identification of plaintiff by Tamika White from the photographic array, the picture used by the police was evidently 10 years old and had been taken when he was 16 years old. However, the fact that the identification of plaintiff subsequently proved to be invalid does not vitiate the initial existence of probable cause to arrest *(see, Toenis v Hommel,* 59 AD2d 1000), which can certainly be based upon a photographic identification *(People v Rhodes,* 111 AD2d 194; *People v Brewster,* 100 AD2d 134, *affd* 63 NY2d 419; *Brown v City of New York,* 92 AD2d 15, *affd* 60 NY2d 893).

■ In contrast to the situation regarding the claim for false arrest, the record herein reveals sufficient evidence to support the cause of action for malicious prosecution. According to the New York Court of Appeals, the "elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice" *(Broughton v State of New York,* 37 NY2d 451, 457, *cert denied sub nom. Schanbarger v Kellogg,* 423 US 929). The first two components are clearly presented in the instant case and, indeed, are conceded by defendant. Thus, the only relevant inquiry concerns the existence of probable cause for the criminal proceeding, which is different than the probable cause required for an arrest, and

actual malice. Probable cause in this context "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty" *(Colon v City of New York,* 60 NY2d 78, 82). Notwithstanding that the mere existence of an alibi by plaintiff would not necessarily negate probable cause for the commencement of a proceeding, the presumption of regularity ordinarily attendant upon an accused's arraignment *(see, Gisondi v Town of Harrison,* 72 NY2d 280) is rebutted "by proof the court orders were the result of fraud, perjury or the suppression of evidence by the police" *(Gisondi v Town of Harrison, supra,* at 284). Consequently, where, as in the instant matter, there is evidence that "the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith" *(Colon v City of New York, supra,* at 82-83) the presumption of probable cause has been overcome, and it can no longer be held as a matter of law that defendant prosecuted plaintiff with probable cause and without malice *(see, Munoz v City of New York,* 18 NY2d 6). Certainly, the failure of the prosecutor to investigate further when confronted with the inconsistency between the statements in the accusatory instrument and the lineup identifications by another set of witnesses undermines the assertion that the People possessed probable cause as a matter of law to proceed with the prosecution against plaintiff *(see, Smith v County of Nassau,* 34 NY2d 18, wherein the Court of Appeals specifically noted that the failure of the police to investigate contradictions in the facts available to them precluded a finding of probable cause as a matter of law).

█ As for the requirement of establishing actual malice, this element "may be proven by circumstantial evidence * * * and may thus in a sense be denominated 'implied' or 'inferred' in certain cases" *(Nardelli v Stamberg,* 44 NY2d 500, 502). Therefore "[w]hile lack of probable cause to institute a criminal proceeding and proof of actual malice are independent and indispensable elements of a malicious prosecution action, the absence of probable cause does bear on the malice issue. Actual malice is seldom established by direct evidence of an ulterior motive on the part of the prosecutor" *(Martin v City of Albany,* 42 NY2d 13, 17). A jury may infer the existence of actual malice from the absence of probable cause *(Martin v City of Albany, supra).* Since there is proof that Detective

Fitzpatrick submitted two separate perjurious statements and that plaintiff was, therefore, detained on the basis of, in effect, a fraudulent felony complaint and remained incarcerated for 24 days because of the lack of a timely investigation by the District Attorney, it cannot be deemed as a matter of law that the jury was unwarranted in finding from the circumstances herein that there was no probable cause to prosecute plaintiff and that actual malice had been demonstrated.

█ Finally, there is no substance to defendant's assertion that the jury's monetary award was excessive. Plaintiff, who had worked steadily for seven years at Consolidated Edison to build a reputation for honesty and responsibility, was arrested on the job and escorted out in front of numerous colleagues to be placed in a police vehicle. News of his arrest was broadcast on the radio and published in the newspapers, and then, despite his clear roots in the community and stable employment record, he was denied bail and kept in jail for more than three weeks. In addition to his substantial emotional pain and humiliation, he incurred a not insignificant loss of wages and was compelled to pay counsel fees. There is also evidence that plaintiff's incarceration negatively impacted upon his effort to engage in his own part-time business. Thus, the jury's assessment of damages was not unreasonable (see, Vitale v Hagan, 132 AD2d 458, mod on other grounds 71 NY2d 955). However, the $25,000 specifically awarded on the claim for false arrest was appropriately vacated.

Accordingly, the order of the Appellate Term, First Department, entered on May 25, 1988, reversing a judgment of the Civil Court, Bronx County (Howard R. Silver, J.), entered on June 25, 1986, which, following a jury trial, rendered a verdict in favor of plaintiff and against defendant City of New York and awarded him the sum of $175,000 plus interest, costs and disbursements, should be modified, on the law, to the extent of reinstating the verdict with respect to the cause of action for malicious prosecution and reinstating the monetary award minus the $25,000 specifically granted on the false arrest claim, and otherwise affirmed, without costs or disbursements.

Murphy, P. J., Rosenberger and Ellerin, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered on May 25, 1988 which reversed a judgment of the Civil Court, Bronx County, entered on June 25,

1986, in appellant's favor in the amount of $175,000, unanimously modified, on the law, to the extent of reinstating the verdict with respect to the cause of action for malicious prosecution and reinstating the monetary award minus the $25,000 specifically granted on the false arrest claim, and otherwise affirmed, without costs or disbursements.