Herbert W. ROUNSEVILLE and Robert Rounseville, Plaintiffs–Appellants,

v.

Samuel ZAHL, Treva M. Way, and Geoffrey P. Serata, Defendants–Appellees.

No. 498, Docket 93–7441.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1993.

Decided Jan. 11, 1994.

Ronald R. Benjamin, Binghamton, NY, for plaintiffs-appellants.

Kenneth S. Kagan, Waverly, NY (William S. Friedlander and Friedlander, Friedlander, Reizes & Joch, on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and POLLAK,* District Judge.

JON O. NEWMAN, Chief Judge:

This appeal, which primarily concerns the elements of a malicious prosecution action under New York law, arises in a combative context that does little credit to any of the litigants. First, the appellant tax assessors assessed the properties of the appellees. The appellees responded by initiating criminal charges against the tax assessors. The assessors countered with the pending suit asserting a federal civil rights claim and a state law claim for malicious prosecution. When the smoke cleared in the District Court, the assessors' suit was dismissed, and the property owners, who had first resorted to the courts, were awarded attorney's fees and Rule 11 sanctions. Not surprisingly, that outcome has been appealed.

Plaintiffs-appellants Herbert and Robert Rounseville appeal from the April 14, 1993, judgment of the District Court for the Northern District of New York (Howard G. Munson, Judge) dismissing their complaint, awarding attorney's fees to defendants, and imposing Rule 11 sanctions upon their counsel. See *Rounseville v. Zahl*, 819 F.Supp. 1148 (N.D.N.Y.1993). We hold that there are disputed issues of fact that preclude summary judgment dismissal of the Rounsevilles' state law malicious prosecution claim on the merits. We also hold that the defendants are not entitled to attorney's fees and that the District Court should not have imposed Rule 11 sanctions. Finally, we conclude that,

with the federal claim properly dismissed, the District Court should relinquish jurisdiction over the remaining state law claim and leave these litigants to continue their sparring, if they wish, in state court.

### Background

Few citizens are pleased with their share of a community's tax burden. Unfortunately, the defendants-appellees, Samuel Zahl, Treva M. Way, and Geoffrey P. Serata, three citizens of Richford, New York, decided to express frustration with their tax bill by initiating criminal charges against the Town Assessors for Richford, Herbert and Robert Rounseville. When these charges were not pursued, the Rounsevilles sought their measure of revenge by instituting a claim under 42 U.S.C. § 1983 with a pendent state law claim for malicious prosecution.

Zahl, Way, and Serata were among a group of Richford residents unhappy over various tax assessment practices of the Rounsevilles. Specifically, the appellees believed their properties were assessed too high, and they were irritated by a plan to raise assessments piecemeal over three years. After reviewing public tax rolls that they believed revealed improper acts by the Rounsevilles, the appellees approached the local District Attorney. When he declined to act, the appellees took it upon themselves to initiate a criminal prosecution against the Rounsevilles. On March 25, 1989, at the home of Judge James W. Barrett, the Richford Town Justice, the defendants swore to an accusatory instrument, which was typed out by Judge Barrett's wife, alleging that the Rounsevilles engaged in official misconduct in violation of N.Y.Penal Law § 195.00 (McKinney 1988). The District Attorney refused to prosecute and recommended dismissal of this charge. A dismissal was entered on May 13, 1989, by Judge Barrett.

The Rounsevilles then brought this suit against the appellees and Judge Barrett. The plaintiffs asserted that the defendants had conspired with Judge Barrett to bring false criminal charges. Judge Barrett's in-

---

* The Honorable Louis H. Pollak of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

volvement as a state actor served as the basis for the section 1983 claim and thus for federal jurisdiction.

After limited discovery, defendants moved for summary judgment. The Rounsevilles did not file papers in opposition to the defendants' summary judgment motion, but in a letter to the District Court, after the time for response papers, the Rounsevilles sought an adjournment or leave to file late papers. The District Court denied these requests, heard oral arguments the next week, and issued a ruling in favor of the defendants in all respects.

On appeal, the Rounsevilles claim that the District Court (1) abused its discretion by denying their request for an adjournment or leave to file late papers, (2) erred in granting summary judgment for defendants because there are factual issues in dispute, (3) improperly awarded attorney's fees under section 1988 to the defendants, and (4) abused its discretion by imposing Rule 11 sanctions against their counsel.

### Discussion

#### I. Denial of Motion for Adjournment or Leave to File Late Papers

■ The defendants first moved for summary judgment in June of 1991. Involved with a trial in another case, counsel for the Rounsevilles sought an adjournment until December 13, 1991, but defendants would consent to an adjournment only until November 8, 1991. Under the local rules in the Northern District of New York, the Rounsevilles' response papers were thus due October 25. Judge Munson's clerk telephoned the Rounsevilles' counsel when this deadline had passed without the submission of opposition papers, and only then did counsel respond with a letter and affidavit seeking an adjournment or leave to file late papers. Counsel for the Rounsevilles claimed primarily that he was seeking to settle this case with Judge Barrett, a course that would have eliminated the section 1983 claim and permitted the relocation of the rest of the case to state court.

The denial of an adjournment was within the District Court's ample discretion. *See*

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 341 (2d Cir.1986); *see generally* 5 James W. Moore et al., *Moore's Federal Practice* ¶ 40.02 (2d ed. 1993). Counsel for the Rounsevilles does not present any compelling reason why settlement could not have been effected prior to October 25 or why he could not at least have made his adjournment request before the deadline.

#### II. Summary Judgment for Defendants

A. *Section 1983 claim.* The District Court granted summary judgment dismissal of the Rounsevilles' section 1983 claim by (1) concluding that the Rounsevilles had not been deprived of any right, privilege, or immunity secured by the Constitution or the laws of the United States, and (2) finding that the Rounsevilles had failed to come forward with enough evidence of a conspiracy involving Judge Barrett to satisfy the state action requirement of section 1983. The Rounsevilles apparently do not contest the dismissal of their section 1983 claim, as their brief challenges only the grant of summary judgment on the pendent state law malicious prosecution claim.

■ B. *Malicious Prosecution Claim.* To prevail on a malicious prosecution claim under New York law, a plaintiff must establish (1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) the lack of probable cause for commencing the proceeding, and (4) actual malice as the motivation for defendant's actions. *See Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1249 (1983); *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306 (1977); *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991).

1. *Initiation of Criminal Proceeding.* There is no dispute that the defendants swore out an accusatory instrument, which would appear under New York law to satisfy the requirement that the defendants' initiated a criminal proceeding against the Rounsevilles. *See DeFilippo v. County of Nassau,* 183 A.D.2d 695, 696, 583 N.Y.S.2d

283, 284 (2d Dep't 1992). On appeal, the defendants do not contest the District Court's holding that the first element of a malicious prosecution claim was established.

■ 2. *Termination of Proceeding in Plaintiffs' Favor.* The Rounsevilles claim that the local District Attorney's recommendation to dismiss the criminal charges brought by the defendants amounts to a formal abandonment of their prosecution, which, according to one New York decision, constitutes a favorable termination for the accused, *see Loeb v. Teitelbaum,* 77 A.D.2d 92, 101–02, 432 N.Y.S.2d 487, 493–94 (2d Dep't 1980). The defendants counter that the District Attorney had stated that he would not pursue the matter because it would require hiring an independent assessor. The defendants thus assert that the prosecution was concluded "in the interest of justice," which under New York law does not amount to a favorable termination, *see, e.g., Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 504–05, 478 N.Y.S.2d 823, 829, 467 N.E.2d 487, 493 (1984); *Manno v. State of New York,* 176 A.D.2d 1222, 1223, 576 N.Y.S.2d 717, 717 (4th Dep't 1991).

■ The District Court emphasized that the Rounsevilles had not presented specific evidence that the criminal proceeding was terminated in their favor. The District Court thus ruled that the defendants "met their summary judgment burden by pointing to the absence of evidence to support this prong of the prima facie test on plaintiffs' claim for malicious prosecution." 819 F.Supp. at 1162. Yet, when the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment. *See Allen v. Town of Colonie,* 182 A.D.2d 998, 1000, 583 N.Y.S.2d 24, 26 (3d Dep't 1992) (stating that plaintiff was not initially required to come forward with proof that a proceeding was terminated

in his favor)[1]; *but cf. Witcher v. Children's Television Workshop,* 187 A.D.2d 292, 293–94, 589 N.Y.S.2d 454, 455 (1st Dep't 1992) (holding that plaintiff failed to state a claim for malicious prosecution when she did not allege proceedings were terminated in her favor and her counsel stated the dismissal of the charges against her did not indicate she was innocent).

The parties' very dispute over the details of the terminated criminal proceedings suggests why this element of the malicious prosecution claim cannot be resolved through summary judgment. The factual record is without any specific evidence concerning why the charges brought by defendants against the Rounsevilles were dismissed. At this stage, all the record reveals is that the District Attorney moved for dismissal and that this motion was granted. As this Court explained in *Janetka v. Dabe,* 892 F.2d 187 (2d Cir.1989), when "a termination is indecisive because it does not address the merits of the charge, the facts surrounding the termination must be examined to determine 'whether the failure to proceed implies a lack of reasonable grounds for the prosecution.'" *Id.* at 189 (quoting *Conway v. Village of Mount Kisco,* 750 F.2d 205, 215 (2d Cir.1984)). Here, the facts surrounding the termination are in dispute, thus precluding a summary judgment dismissal of the malicious prosecution claim based on this issue.

■ 3. *Lack of Probable Cause.* In the context of a malicious prosecution claim, probable cause under New York law is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Pandolfo v. U.A. Cable Systems of Watertown,* 171 A.D.2d 1013, 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991); *see also Colon v. City of New York,* 60 N.Y.2d 78,

[1]. In its ruling, the District Court stated that it disagreed with the *Allen* decision which required the defendant to show that the underlying proceedings were *not* terminated in plaintiff's favor in order to support his motion for summary judgment. Yet, the District Court is bound to apply state law when ruling on a pendent state claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1249 (1983).

The District Court ruled as a matter of law that the defendants had probable cause to institute the proceedings against the Rounsevilles. *See* 819 F.Supp. at 1162–63. Relying on the defendants' affidavits, the Court pointed out that the defendants attended town meetings, reviewed the tax rolls, and consulted an attorney in developing a suspicion of wrong-doing. The Court further noted that these suspicions were verified when, according to the defendants' summary judgment papers, the Executive Director of the New York State Division of Equalization and Assessment told them that the Rounsevilles' practices were illegal.

Since, in the context of a summary judgment motion, a court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party, *see, e.g., Lendino v. Trans Union Credit Information Co.*, 970 F.2d 1110, 1112 (2d Cir.1992), we think the District Court erred by concluding as a matter of law that the defendants had probable cause to initiate a criminal charge. The sparse factual record in this case, when viewed most favorably to the Rounsevilles, does not eliminate the possibility that the defendants initiated the criminal proceeding without probable cause. *Cf. Heller v. Ingber*, 134 A.D.2d 733, 734–35, 521 N.Y.S.2d 554, 556 (3d Dep't 1987) (agreeing that malicious prosecution claim should not be dismissed "since there were conflicting versions of the facts" concerning probable cause). The District Court found probable cause as a matter of law by relying on evidence that is not uncontroverted nor clearly establishes the existence of probable cause. First, it is questionable whether a lay person without any tax assessment training or knowledge could reasonably conclude that tax assessors had engaged in official misconduct simply by attending town meetings and reviewing public tax rolls. Second, the record is vague concerning exactly when the defendants consulted with a lawyer and the nature and

details of his advice.[2] Third, the defendants' own affidavits suggest it was only after they had filed their criminal complaint that they were told by the Director of the Division of Equalization and Assessment that the Rounsevilles' practices were illegal. Thus, at the time they initiated the criminal charges against the Rounsevilles, the appellees did not clearly have knowledge of any "facts" that presented reasonable grounds for a prosecution. The only circumstance suggesting the Rounsevilles were guilty of official misconduct was the appellees' own conjecture that their property assessments were too high.

The New York Court of Appeals has recently explained in this exact context that:

the issue of probable cause is a question of law to be decided by the court only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts.... Where there is "conflicting evidence, from which reasonable persons might draw different inferences ... the question [is] for the jury."

*Parkin v. Cornell University*, 78 N.Y.2d 523, 529, 577 N.Y.S.2d 227, 229–30, 583 N.E.2d 939, 942 (1991) (quoting *Veras v. Truth Verification Corp.*, 87 A.D.2d 381, 384, 451 N.Y.S.2d 761, 764 (1st Dep't), *aff'd*, 57 N.Y.2d 947, 457 N.Y.S.2d 241, 443 N.E.2d 489 (1982)).

■ 4. *Actual Malice.* Showing malice under New York law in this context

does not require a plaintiff to prove that the defendant was motivated by spite or hatred, ... [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.

*Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975, 976 (1978). New York courts recognize that actual malice can rarely be established through direct evidence and thus may be proven though circumstantial evidence. *See, e.g.,*

---

**2.** Further, New York law is unclear concerning the effect of the advice of counsel on the question of probable cause. *See Morrissey v. National Maritime Union of America*, 544 F.2d 19, 28 & n. 4 (2d Cir.1976). Some New York cases have held that the advice of counsel is irrelevant to probable cause, while others have viewed such advice as pertinent to, though not determinative of, the existence of probable cause. *See id.* at 28 n. 4.

*Martin v. City of Albany,* 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 614–15, 364 N.E.2d 1304, 1306–08 (1977). In light of the circumstantial evidence present here—the history of friction between the defendants and the Rounsevilles prior to the initiation of the criminal proceedings—it would not be unreasonable for a fact-finder to infer that the defendants acted with a wrong or improper motive.

■ Further, New York law considers the lack of probable cause and the presence of malice closely related. *See id.,* 42 N.Y.2d at 17, 396 N.Y.S.2d at 614–15, 364 N.E.2d at 1306–08. New York courts have held that the existence of malice may be inferred from a finding that defendants lacked probable cause to initiate criminal proceedings. *See, e.g., Maxwell v. City of New York,* 156 A.D.2d 28, 34–35, 554 N.Y.S.2d 502, 505–06 (1st Dep't 1990). Thus, our conclusion that the lack of probable cause presents a jury question likewise suggests that the existence of malice cannot be resolved through summary judgment. Indeed, New York courts traditionally consider the issue of malice to be a jury question. *See, e.g., Munoz v. City of New York,* 18 N.Y.2d 6, 11, 271 N.Y.S.2d 645, 650, 218 N.E.2d 527, 530 (1966); *see also Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Cox v. County of Suffolk,* 827 F.Supp. 935, 940 (E.D.N.Y.1993).

■ C. *Disposition.* Though we rule that factual issues preclude the grant of summary judgment, we also conclude that a trial, if it occurs, should not be in federal court. Because the Rounsevilles have not even contested the summary judgment dismissal of their federal claims, all that remains of this case is a state law claim. It would be an inappropriate exercise of pendent jurisdiction and a waste of federal judicial resources for the District Court to hold a trial on a purely state claim, especially in the context of this litigation.

In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court explained that "the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." *Id.* at 727, 86 S.Ct. at 1139. The

Court thus suggested that a trial court could refuse pendent jurisdiction over a state claim at any stage of a federal proceeding: "Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, ... [whereby] dismissal of the state claim might even then be merited." *Id.* The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). Nevertheless, some Second Circuit precedents suggest that it is not necessarily an abuse of discretion for a district court to continue to exercise jurisdiction over a state claim even when the federal claim to which it is pendent has been dismissed before trial, *see, e.g., Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 545–46 (2d Cir.1989). Thus, the District Court may have acted within its discretion by entertaining a summary judgment motion that offered some prospect of ending the litigation entirely.

However, now that it is clear that there are disputed questions of fact that require a trial on the state law claim, this case involves a *complete* "hegemony of state law claims," such that relinquishment of federal court jurisdiction is warranted. *See Robison v. Via,* 821 F.2d 913, 925–27 (2d Cir.1987) (holding, after finding section 1983 claims should have been summarily dismissed, that "the federal court should not take pendent jurisdiction of the [state] claim"); *Fay v. South Colonie Central School District,* 802 F.2d 21, 34 (2d Cir.1986) (finding district court's decision to assume pendent jurisdiction to be an abuse of discretion); *see also DiLaura v. Power Authority of the State of New York,* 982 F.2d 73, 80 (2d Cir.1992) (concluding that district court did not abuse its discretion by relinquishing jurisdiction over a state tort claim after federal claim was dismissed). Only limited discovery has taken place on the underlying substantive state claim. Further, though New York's malicious prosecution law is well-settled, the application of the law to

the facts of this case is potentially novel and is appropriately resolved in state court.

## III. Award of Attorney's Fees to Defendants Under Section 1988

■ Though we are reversing the grant of summary judgment on the state malicious prosecution claim, the District Court's award of attorney's fees to the defendants under 42 U.S.C. § 1988 remains an issue because the defendants are still "prevailing part[ies]" on the section 1983 claim.

■ Concerned about the potential chilling effect on section 1983 plaintiffs—who are "'the chosen instrument of Congress to vindicate' a policy of the highest national priority"—we are hesitant to award attorney's fees to victorious defendants in section 1983 actions. See Santiago v. Victim Services Agency of Metropolitan Assistance Corp., 753 F.2d 219, 221 (2d Cir.1985) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 418, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978)). A court should award defendants attorney's fees under section 1988 only if "the plaintiff's claim was 'frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.'" Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986) (quoting Hughes v. Rowe, 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (internal quotations omitted)), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Though a showing that the plaintiff acted in bad faith will further support an award under section 1988, the determination generally turns on whether the claim itself is clearly meritless. See Davidson v. Keenan, 740 F.2d 129, 133 (2d Cir.1984). The District Court concluded that the Rounsevilles' section 1983 claim was meritless, relying primarily on the fact that the Rounsevilles "came forward with nothing but conclusory and unsupportable allegations regarding the involvement of Judge Barrett." 819 F.Supp. at 1165.

■ Though the Rounsevilles did not have any direct proof to support their claim of conspiracy, there was circumstantial evidence at the time they filed their complaint to support the existence of a conspiracy involving Judge Barrett. The defendants went to Judge Barrett's home to swear out the criminal complaint against the Rounsevilles, where Judge Barrett's wife typed out the document for them. Further, according to the Rounsevilles' counsel, Judge Barrett had attended citizen rallies in protest of the Rounsevilles' tax assessments and had also discussed these matters with the defendants prior to their filing of criminal charges. As we often note in other contexts, conspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence, see, e.g., United States v. Rivera, 971 F.2d 876, 890 (2d Cir.1992); United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992). In light of the circumstantial evidence, the Rounsevilles' claim at the time of filing was not so frivolous, unreasonable, or groundless as to justify an award of defendants' attorney's fees under section 1988.

## IV. Rule 11 Sanctions

■ The District Court concluded that the Rounsevilles' counsel had brought a section 1983 claim that was "baseless in both law and fact." 819 F.Supp. at 1167. The Court noted that Judge Barrett was likely to have absolute immunity for his activities taken in his official capacity and that this presented a significant obstacle to the Rounsevilles' claim. The District Court also said it seemed that counsel inquired into the facts only after first filing a complaint. Finally, the District Court stated that the facts did not support the essential elements of the state law claim. On these grounds, the District Court, sua sponte, ordered the Rounsevilles' counsel to pay $1,000 pursuant to Rule 11 of the Federal Rules of Civil Procedure.

■ Though the actions of the Rounsevilles' counsel have been far from exemplary, the District Court's imposition of Rule 11 sanctions here amounted to an abuse of discretion. First, the District Court raised and decided the issue of sanctions on its own without any warning to counsel. We have noted that due process requires at least notice and opportunity to be heard before the imposition of Rule 11 sanctions. See Securities Industry Ass'n v. Clarke, 898 F.2d 318,

322 (2d Cir.1990); *Sanko Steamship Co., Ltd. v. Galin,* 835 F.2d 51, 52–53 (2d Cir.1987).

Second, because all doubts are to be resolved in favor of the signer of the document that is the basis for Rule 11 sanctions, *see Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993); *Associated Indemnity Corp. v. Fairchild Industries, Inc.,* 961 F.2d 32, 35 (2d Cir.1992), the District Court's conclusion that the Rounsevilles' section 1983 claim was baseless in both law and fact is questionable. Even if Judge Barrett was shielded by absolute immunity from personal liability, his involvement as a state actor in an alleged conspiracy might still ground a viable section 1983 claim against the other conspirators, *see Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991). And, as detailed above, at the time the Rounsevilles' counsel filed the complaint, the available circumstantial evidence could plausibly support the inference that there was a conspiracy involving Judge Barrett and the defendants. Further, since we are reversing the summary judgment dismissal of the malicious prosecution claim, we obviously do not view this state claim as wholly without foundation. Thus, though Judge Munson may have quite reasonably felt that the Rounsevilles' counsel (and for that matter all the players in this petty dispute) acted inappropriately, we do not think Rule 11 sanctions were justified.

### Conclusion

We reverse the District Court's summary judgment dismissal of the Rounsevilles' state malicious prosecution claim on the merits, and remand with instructions to dismiss this claim, without prejudice, for lack of federal jurisdiction. We also reverse the award of attorney's fees to the defendants under section 1988 and the imposition of Rule 11 sanctions against the Rounsevilles' counsel.