82 F.3d 563
 Elizabeth M. LOWTH and William W. Lowth, Sr., Plaintiffs-Appellants,
v.
The TOWN OF CHEEKTOWAGA, Scott Grant, Individually and in
his capacity as an Employee, Agent, Officer and/or Deputy of
the Police Department of the Town of Cheektowaga, Daniel
Smith, Individually and in his capacity as an Employee,
Agent, Officer and/or Deputy of the Police Department of the
Town of Cheektowaga, Kenneth Rusin, Individually and in his
capacity as an Employee, Agent, Officer and/or Deputy of the
Police Department of the Town of Cheektowaga, Anthony
Filipski, Individually and in his capacity as an Employee,
Agent, Officer and/or Deputy of the Police Department of the
Town of Cheektowaga, Michael Hockwater, Individually and in
his capacity as an Employee, Agent, Officer and/or Deputy of
the Police Department of the Town of Cheektowaga, Michael
Isbrandt, Individually and in his capacity as an Employee,
Agent, Officer and/or Deputy of the Police Department of the
Town of Cheektowaga, Defendants-Appellees.
 No. 903, Docket 95-7691.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 4, 1996.
Decided May 3, 1996.
As Amended May 21, 1996.
 
 Appeal from a decision of the United States District Court for the Western District of New York (Elfvin, J.) granting summary judgment to the defendants in an action under 42 U.S.C. § 1983. The district court held that the municipal defendant could not be held liable because no town policy or custom was implicated by the complained-of police activity. The court further found that qualified immunity protected the individual police officers on all counts.
 K. Michael Sawicki, Buffalo, N.Y. (Mark J. Schlant, of counsel), for plaintiffs-appellants.
 Joseph J. Schoellkopf, Jr., Buffalo, N.Y. (Alan P. Schaefer, of counsel), for defendants-appellees.
 Before: McLAUGHLIN, CALABRESI, and CABRANES, Circuit Judges.
 CALABRESI, Circuit Judge:
 
 
 1
 This case involves private citizens who claim that police officers violated their constitutional rights by arresting and prosecuting them on charges of which a jury subsequently absolved them. The district court, on summary judgment, dismissed the citizens' suit against the officers, and the citizens have appealed.
 
 
 2
 In an appeal from a grant of summary judgment, we are required to consider the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). But, for the purposes of the qualified immunity analysis, we consider only those facts that were actually available to the police officers, or could reasonably have been perceived by them, at the moment they engaged in the challenged conduct. Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). Fulfilling both of these responsibilities is always difficult where many of the disputed facts involve states of mind. It becomes especially complicated where, as here, the parties had radically differing perceptions of what was happening at the time they acted. We find that what the appellants believed was happening on the night they were arrested is relevant to the reasonableness of the police officers' behavior only to the extent either that the appellants in some way expressed their beliefs to the officers or that their beliefs should otherwise have been apparent to reasonable police officers.
 
 Background
 
 3
 On the evening of July 1, 1993, several police officers of the Town of Cheektowaga were investigating the actions of two suspicious individuals who had been seen in and around the backyard of a house at 195 Santin Drive. One of the officers involved in the investigation was defendant Scott Grant. He had been off duty, and had responded to a radio call from his colleagues. He was driving an unmarked car and was wearing jeans and a "muscle" shirt. Obviously hurrying to join the investigation, Officer Grant pulled up in front of the driveway at 195 Santin Drive and left his car (partially blocking the driveway) with its engine running, its lights on, and the driver's door open.
 
 
 4
 Soon after, at about 10 p.m., William and Elizabeth Lowth, who lived at 195 Santin Drive, returned home after a peaceful dinner in town. Seeing an automobile blocking the entrance, and presumably wanting to put her own car in the driveway, Mrs. Lowth left her car and got into the unmarked police vehicle in order to move it away. At just that point, Officer Grant, who had been questioning the suspects behind the house, came out of the yard and saw Mrs. Lowth in his car. Grant claims to have yelled to Mrs. Lowth, as he was running toward the car, that he was a police officer, and that the car she was driving was a police vehicle. Two of the other officers on the scene testified that they heard him identify himself as a police officer. No one disputes this testimony, although Mr. Lowth and the remaining officers said that they only heard Grant shout "something" as he headed toward the car. In any event, Mrs. Lowth has affirmed that she did not hear him identify himself, and we accept her statement as true.
 
 
 5
 When he reached the car, Officer Grant reached through the driver's window and, while trying to stop the car, struck Mrs. Lowth. Attacked by an unknown man, dressed as casually as Officer Grant was, Mrs. Lowth panicked and accelerated. The car swerved onto a neighbor's lawn next to the driveway and moved forward with Officer Grant hanging half in and half out of the window. About two feet in front of a tree on the neighbor's lawn, Mrs. Lowth slammed on the brakes, and the car lurched to a halt.
 
 
 6
 When the car had stopped moving, Officer Grant pulled Mrs. Lowth out, placed her on the ground with his knee on her back, and handcuffed her. Throughout the scuffle, Mrs. Lowth both yelled at Grant to get off her and shouted to her husband to get the police. At the moment when he handcuffed her, Officer Grant, apparently realizing what she had been screaming, flashed his badge and said "Lady, I am the police, and you are under arrest." Mrs. Lowth immediately stopped resisting.
 
 
 7
 While Officer Grant and Mrs. Lowth were struggling over control of the unmarked vehicle, Mr. Lowth got out of his car andshouting and cursing--went toward his wife and Officer Grant, as fast as his bad back would allow. Defendant Michael Hockwater, who was standing nearby with several other uniformed officers, pointed his gun at Mr. Lowth and ordered him to stop. He put Mr. Lowth up against the police car and held him there for about 30 seconds until Mr. Lowth informed the officer that 195 Santin Drive was his home.
 
 
 8
 Mrs. Lowth was immediately taken to the police station and was charged with unauthorized use of a motor vehicle, in violation of New York Penal Law § 165.05; with reckless endangerment, in violation of New York Penal Law § 205.30; and with resisting arrest, in violation of New York Penal Law § 120.20. She was subsequently prosecuted on each of these three charges, and in March 1994 a jury acquitted her on all counts.
 
 
 9
 The Lowths then brought this suit, under 42 U.S.C. § 1983 and New York law. Mrs. Lowth claimed that Officer Grant's decision to arrest her for reckless endangerment and unauthorized use of a motor vehicle amounted to a false arrest under New York law, and hence infringed her Fourth Amendment right to be free from unreasonable searches and seizures. She also claimed that Officer Grant's decision to charge her with these crimes and with the additional crime of resisting arrest constituted malicious prosecution, and therefore violated her Fourteenth Amendment due process rights. Both Mr. and Mrs. Lowth asserted claims for assault and battery amounting to an unconstitutional use of excessive force against Officers Grant and Hockwater. They included the Town of Cheektowaga and the other officers involved in the investigation that night in their suit.
 
 
 10
 The district court (Elfvin, J.) granted summary judgment to the defendants on all grounds. The court found that the Town of Cheektowaga could not be subject to suit on these claims because the police actions did not involve town custom or policy. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). It further held that the police officers were entitled to qualified immunity because their actions were objectively reasonable under the circumstances. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Since the court dismissed all of the plaintiffs' federal claims, it also declined to retain jurisdiction over the related state law ones.[1]
 
 
 11
 On appeal, the Lowths argue that summary judgment was inappropriate as to Officers Grant and Hockwater on the § 1983 claims because their actions were not those of reasonable police officers. We affirm the district court's decision insofar as it concerns the Lowths' claims of assault and battery, and Mrs. Lowth's claims of false arrest. We further find that Officer Grant is entitled to qualified immunity as to Mrs. Lowth's claims that she was maliciously prosecuted for the unauthorized use of a motor vehicle and for reckless endangerment. But we conclude that summary judgment was not appropriate with respect to Mrs. Lowth's claim that charging her with resisting arrest constituted a malicious prosecution. Accordingly, we reverse that portion of the district court's decision and remand the case for further proceedings.
 
 Discussion
 
 12
 The doctrine of qualified immunity shields government employees acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their conduct violated clearly established rights of which an objectively reasonable official would have known. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. The Supreme Court has stated that the immunity accorded officials by this doctrine protects "all but the plainly incompetent or those who knowingly violate the law," and added that "if officers of reasonable competence could disagree on [the legality of an act], immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Since it is not disputed here that freedom from false arrest, from malicious prosecution, and from the use of excessive force are all clearly established rights, see Cook v. Sheldon, 41 F.3d 73, 77, 79 (2d Cir.1994); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991), cert. denied sub nom. Lillis v. Golino, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992), the question of qualified immunity in this case turns on whether the actions of Officer Grant and the other officers were objectively reasonable under the circumstances.
 
 A. False Arrest
 
 13
 In order to prove false arrest, a plaintiff must show that 1) the officer intended to confine the plaintiff; 2) the plaintiff was conscious of the confinement and did not consent to it; and 3) the confinement was not otherwise privileged. See Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 373 N.Y.S.2d 87, cert. denied sub nom. Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Only the third part of this test--whether Officer Grant's confinement of Mrs. Lowth was "otherwise privileged," that is, whether he had probable cause to arrest her--is disputed here.
 
 
 14
 Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it. See Warren v. Dwyer, 906 F.2d 70, 73 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). Probable cause exists when there are "facts and circumstances 'sufficient to warrant a prudent man that the [suspect] had committed or was committing an offense.' " Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975) (citation omitted). Applying these standards, we conclude that Officer Grant had probable cause to arrest Mrs. Lowth for both reckless endangerment and unauthorized use of a motor vehicle.
 
 1. Unauthorized Use of a Motor Vehicle
 
 15
 Under New York law, "[a] person is guilty of unauthorized use of a vehicle in the third degree when: (1) Knowing that he does not have the consent of the owner, he takes, operates ... or otherwise uses a motor vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know that he does not have such consent...." N.Y. Penal Law § 165.05.
 
 
 16
 Mrs. Lowth gives two reasons for her claim that Officer Grant did not have probable cause to arrest her for violating this statute. She contends that she had a right to move the car because blocking her driveway constituted a public nuisance. Her right to abate such a nuisance, she claims, precludes any possible criminality. And she argues that she was not guilty of "knowingly" driving a car without authorization because she believed that the car belonged to a friend of her daughter's who had given her implicit consent to drive it.
 
 
 17
 The "public nuisance" argument lacks legal merit. While New York courts have held that private citizens may abate public nuisances under certain circumstances, this right is not absolute. A temporary obstruction on a public highway does not constitute a public nuisance. See Lyman v. Village of Potsdam, 228 N.Y. 398, 127 N.E. 312 (1920); People ex rel. Hofeller v. Buck, 193 A.D. 262, 184 N.Y.S. 210 (4th Dep't 1920), aff'd, 230 N.Y. 608, 130 N.E. 913 (1921); Erie v. Marjorie's Grove & Catering Serv., Inc., 97 Misc.2d 329, 411 N.Y.S.2d 501 (Sup.Ct. Erie County 1978). Moreover, even if Officer Grant's blocking of the Lowths' driveway could be considered a nuisance, the right to abate the nuisance without notice is only available where the injury caused by the nuisance is substantial, see Wakeman v. Wilbur, 147 N.Y. 657, 663, 42 N.E. 341, 342 (1895), and where "danger is imminent to health, life, or property, and the necessity of prompt removal [is] urgent," Childers v. New York Power & Light Corp., 275 A.D. 133, 89 N.Y.S.2d 11, 12 (3d Dep't 1949). Accordingly, though the car parked in front of their driveway may have caused the Lowths some inconvenience, it was not the type of serious public nuisance that could give Mrs. Lowth a right to drive the car without the consent of its owner. And this is especially so since the car's motor was running and Mrs. Lowth could reasonably have expected the owner to be nearby and available to move the car promptly.
 
 
 18
 Mrs. Lowth further contends that she did not violate § 165.05 because she believed that the car belonged to a friend of her daughter's, that she had moved that person's car once before without objection, and that she, therefore, had his implicit consent to do it again. But Mrs. Lowth's belief as to the ownership of the car cannot operate to make her arrest by Officer Grant unreasonable. Officer Grant had no reason to know at the time he saw her driving the car that she believed it belonged to someone that she knew. The only information available to Officer Grant when he arrested her was that Mrs. Lowth was driving a car that did not belong to her, and that she was doing so without the consent of the car's owner--Grant himself. Given this information, Officer Grant certainly had probable cause to arrest Mrs. Lowth for violating § 165.05.
 
 2. Reckless Endangerment
 
 19
 Regardless of her possible unauthorized use of the car, Mrs. Lowth claims that Officer Grant did not have probable cause to arrest her for "reckless endangerment." New York Penal Law § 120.20 provides that "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Officer Grant arrested Mrs. Lowth under this law for driving the unmarked police car across her neighbor's lawn while he was hanging half inside and half outside of the car. Mrs. Lowth argues that probable cause did not exist for her arrest under this statute because "recklessness" requires conscious disregard of a substantial and unjustifiable risk. See N.Y. Penal Law § 15.05(3). She asserts that any risk that she may have caused Officer Grant was justifiable since she believed that she was protecting herself from an attacker.
 
 
 20
 Once again, probable cause for an arrest must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest, not on the basis of what the arrested party believed to be happening. At first, Officer Grant knew only that Mrs. Lowth was driving his car without permission. He stated (and it is not controverted) that he shouted to her that the car she was driving was a police car and that he was a police officer. Thus, he believed--at least initially--that she knew that she was driving a police car with a police officer hanging out of its window.
 
 
 21
 Of course, by the time he actually arrested Mrs. Lowth--when, in response to her shouting for help, he said "Lady, I am the police, and you are under arrest"--Officer Grant should have realized that Mrs. Lowth had not been aware, as she drove across the lawn, that he was a police officer. At the moment of arrest, then, it is arguable that Officer Grant should have realized that Mrs. Lowth had been acting in what she believed to be self-defense, and hence that she had not been reckless in her behavior.
 
 
 22
 Though arguable, perhaps, this is still not sufficient to overcome the officer's qualified immunity. We must continue to view the events from Officer Grant's perspective. And the fact that a reasonable police officer should have known at the moment of her arrest that Mrs. Lowth had not previously realized that Grant was a police officer does not mean that such an officer would not have arrested her for reckless endangerment. Officer Grant knew that Mrs. Lowth was in a car that did not belong to her. It was not unreasonable for him to assume that, on seeing a stranger running toward the car, Mrs. Lowth would conclude that the stranger was the owner of the car, and was only trying to stop her from driving off with it. Thus, while Officer Grant might well have understood Mrs. Lowth's actions as self-defense, it was equally plausible for him to think, instead, that Mrs. Lowth was simply ignoring the attempt of the owner--police officer or not--to make her stop. If that were the case, then her decision to continue driving--regardless of whether the man hanging outside of the car was a police officer or a civilian--could easily be viewed as reckless.
 
 
 23
 Because, at the very least, reasonable police officers might have disagreed as to the existence of probable cause, Officer Grant is entitled to qualified immunity from Mrs. Lowth's suit on the false arrest claims.
 
 B. Malicious Prosecution
 
 24
 A more difficult question is whether Officer Grant had probable cause ultimately to charge Mrs. Lowth with the offenses for which he had arrested her, and with resisting arrest. In order to succeed in a claim for malicious prosecution, a plaintiff must show 1) that the defendant started a criminal proceeding against her; 2) that the proceeding terminated in the plaintiff's favor; 3) that there was no probable cause for the proceeding; and 4) that the proceeding was instituted with malice. Colon v. City of New York, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455, (1983). Because there is no dispute as to the first two elements, the questions we must address are whether sufficient probable cause existed to charge Mrs. Lowth with each of the crimes, see Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991) (noting that the fact that probable cause existed for one of the crimes may not mean that probable cause existed for each of them), and whether Officer Grant's decision to charge Mrs. Lowth with the crimes was motivated by malice.
 
 
 25
 Under New York law, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." Cox v. County of Suffolk, 780 F.Supp. 103, 108 (E.D.N.Y.1991); see also Maxwell v. City of New York, 156 A.D.2d 28, 554 N.Y.S.2d 502 (1st Dep't 1990); Rodriguez v. City of New York, 149 Misc.2d 295, 563 N.Y.S.2d 1004 (Sup.Ct. N.Y. County 1990). In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact. See Callan v. State, 73 N.Y.2d 731, 532 N.E.2d 96, 535 N.Y.S.2d 590 (1988).[2] The New York Court of Appeals has noted that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." Colon, 60 N.Y.2d at 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (citation omitted).
 
 
 26
 Thus, while Officer Grant has qualified immunity against the claim for false arrest, given that when he made the arrest it was objectively reasonable for him to believe that he had probable cause to do so, we must still consider whether, between the time of the arrest and the time that he arrived at the police station and actually charged Mrs. Lowth, he had received information that was sufficient to eliminate probable cause as to any of the crimes charged. Mrs. Lowth argues that when they had arrived at the police station, Officer Grant should have known that she was not guilty of any crimes because he had learned in the intervening time 1) that the house in front of which the events had occurred was her home; 2) that she had believed the car belonged to a friend of her daughter's; 3) that she had thought Officer Grant was trying to attack her when he ran toward the car and leapt into the window; and 4) that she had not realized until after she was arrested that he was a police officer. The question then is whether this information is of a type that would have led a reasonable police officer to conclude that no probable cause, sufficient to charge Mrs. Lowth with any of the crimes, existed.
 
 
 27
 As to the charge of unauthorized use of a motor vehicle, none of the information Mrs. Lowth and her husband provided to Officer Grant was of the sort that would lead us to say that a reasonable police officer would not have charged her. The fact that Officer Grant's vehicle was parked in front of her driveway did not give Mrs. Lowth the right to move the car. Thus the fact that the incident occurred outside her house did not eliminate probable cause that she was using the motor vehicle without authorization. Although Mrs. Lowth argues that Officer Grant should not have charged her with a violation of § 165.05 because she told him that she thought that the car belonged to her daughter's friend, and that she had implied consent to drive it, her assertion of that belief is not enough to eliminate probable cause. Mrs. Lowth's claim about her daughter's friend was not obviously true on its face. And we cannot say that a reasonable police officer would have had to believe that Mrs. Lowth had moved the automobile due to misidentification, rather than out of pique or impatience and without regard to whose car it was.
 
 
 28
 The continued existence of probable cause for the charge of reckless endangerment is a much tougher question. Once Officer Grant realized that Mrs. Lowth was moving the car out of her own driveway and that she did not know that he was a police officer, he certainly might have concluded that she was frightened by his dash toward the car and that she believed that she was acting to protect herself. This is especially so since, by the time he reached the station, he could reasonably have taken in the fact that, while driving, Mrs. Lowth was calling for police help.
 
 
 29
 With some distance from the immediate confusion of the events at 195 Santin Drive, and with the additional knowledge that he had acquired about Mrs. Lowth's circumstances, Officer Grant might, perhaps, have been wiser had he not charged Mrs. Lowth with reckless endangerment. We must be careful, however, in evaluating a claim of qualified immunity, not to substitute our own judgment for that of the relevant government official, so long as that official's judgment falls within the boundaries of objective reasonableness. And in this case, even with distance and new information, it was not manifestly unreasonable for Officer Grant to charge Mrs. Lowth with reckless endangerment.
 
 
 30
 Officer Grant could still have plausibly concluded that Mrs. Lowth's decision to drive the car with an unknown stranger holding onto the outside was reckless even though he knew a) that it was blocking her driveway, and b) that she did not realize that the car belonged to the police. It was not clearly unreasonable for him to believe that Mrs. Lowth was acting recklessly in endangering someone she should have considered might be the owner of the car--not a random attacker. That she was calling for the police makes it less likely that she thought that the stranger was the owner of the car. But it does not totally preclude it. After all, whoever he was, he had struck her, and that may have been why she was shouting for help. Officer Grant could reasonably have thought that only a reckless person would have been so misled. And if a sensible person would have concluded that the stranger was the owner, Officer Grant might also have believed that it was reckless to keep driving, endangering the stranger, rather than bringing the whole thing to a stop simply by halting the car.
 
 
 31
 Mrs. Lowth's argument has its greatest, and prevailing, force as to the charge of resisting arrest. In New York, a person may be guilty of resisting arrest only if she is aware that she is being arrested. People v. Saitta, 79 A.D.2d 994, 434 N.Y.S.2d 719, 720 (2d Dep't 1981). By the time Officer Grant charged Mrs. Lowth with resisting arrest he had ample reason to know that she had not realized he was a policeman at the time that she was "resisting." Mrs. Lowth's consistent calls for police help while he was arresting her should have alerted him to her confusion. And the fact that--once he had handcuffed her and had responded to her calls for the police by flashing his badge and asserting, "Lady, I am the police"--she had immediately stopped all resistance, should have made the point clear. By the time she was charged--and especially given the additional facts, which by then Officer Grant could not help but have recalled, namely that when the incident occurred he was in plainclothes and that his car was an unmarked vehicle--we think that a reasonable officer would have known that Mrs. Lowth was not aware, while she was resisting, that she was being arrested. It follows that no probable cause existed to charge her with resisting arrest.
 
 
 32
 Of course, in order to proceed with a malicious prosecution charge, Mrs. Lowth must also prove the fourth element of that claim--that the prosecution was motivated by malice. There is certainly sufficient evidence of this element to survive summary judgment. Under New York law, malice does not have to be actual spite or hatred, but means only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03, 377 N.E.2d 975, 976, 406 N.Y.S.2d 443, 445 (1978). In most cases, the lack of probable cause--while not dispositive--"tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." Conkey v. State, 74 A.D.2d 998, 999, 427 N.Y.S.2d 330, 332 (4th Dep't 1980). Given that Officer Grant lacked probable cause to charge Mrs. Lowth with resisting arrest, and given also that it is certainly not implausible that Officer Grant might have been acting out of anger for what Mrs. Lowth had put him through, we think that enough evidence of malice, as defined by New York, can be inferred to survive a motion for summary judgment.
 
 
 33
 We therefore affirm the district court's decision to grant summary judgment to Officer Grant on the claim of malicious prosecution as it relates to the underlying criminal charges. But we remand the case so that Mrs. Lowth can pursue her claim that charging her with resisting arrest constituted malicious prosecution.[3]
 
 C. Excessive Force
 
 34
 Both Mr. and Mrs. Lowth asserted claims against Officers Grant and Hockwater for assault and battery, and for corresponding Fourth Amendment violations. To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used was "objectively unreasonable." Finnegan v. Fountain, 915 F.2d 817, 821, 823 (2d Cir.1990). In determining whether the force used by a police officer was reasonable, the court must, once again, consider the perspective of the officer at the time of the arrest, taking into account the fact that the officer may have been required to make a split-second decision. Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Given the confusion surrounding the events that occurred that night, we agree with the district court that there is no evidence that the amount of force used by Officer Grant in arresting Mrs. Lowth or by Officer Hockwater in detaining Mr. Lowth was objectively unreasonable. Accordingly, we affirm the district court's dismissal of these claims.
 
 Conclusion
 
 35
 We affirm the district court's decision to dismiss the actions brought against the Town of Cheektowaga and the actions brought against Officer Grant for false arrest and for malicious prosecution in charging Mrs. Lowth with unauthorized use of a motor vehicle and reckless endangerment. We also affirm the dismissal of the suits brought against Officers Grant and Hockwater for excessive force. But we reverse the district court's grant of summary judgment in the action against Officer Grant for malicious prosecution in charging Mrs. Lowth with resisting arrest, and we remand the case to allow her to pursue that claim and any related state claims the district court may, in its proper discretion, decide to hear.
 
 
 
 [1]
 The appellants ask us to reverse the district court's decision to the extent that the opinion below might be read as dismissing the related state law claims substantively. We read the opinion of the district court not as dismissing the state law claims on their merits, but instead as declining, under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to retain jurisdiction
 
 
 [2]
 In Callan v. State, 134 A.D.2d 882, 882, 521 N.Y.S.2d 923, 924 (4th Dep't 1987), the Appellate Division concluded that "[t]he active continuation of a proceeding after learning of its groundless nature may result in liability even though the proceeding was initiated in good faith and with probable cause." Two Justices dissented, arguing that probable cause is not "dissipated unless the accuser had knowledge of some intervening fact exonerating plaintiff. The authorities suggest that probable cause is not vitiated unless it becomes apparent that the charge is factually groundless." 134 A.D.2d at 883, 521 N.Y.S.2d at 925 (Denmun, J.P., and Lawton, J., dissenting) (internal citations and quotation marks omitted). The New York Court of Appeals reversed the opinion "for the reasons stated in the dissenting memorandum...." Callan v. State, 73 N.Y.2d 731, 532 N.E.2d 96, 535 N.Y.S.2d 590 (1988)
 
 
 [3]
 As we noted earlier, we read the district court's decision as dismissing the Lowths' pendent state law claims not because they necessarily lacked merit, but in light of its conclusion that the federal claims could not survive a motion for summary judgment. We now remand the case to the district court for further consideration of part of the original federal claim against Officer Grant. Accordingly, we assume that the district court may choose to consider the pendent state claims against Officer Grant on their merits, if the Lowths decide to pursue them further in the federal forum. We, of course, express no opinion as to the merits of those claims, or as to whether, in these circumstances, the district court ought to consider them