**David KINZER, Plaintiff,**

**v.**

**David HARRIS, Individually, and as an Investigator for the New York State Department of Motor Vehicles, Defendant.**

**No. 00–CV–20.**

United States District Court,
N.D. New York.

May 31, 2001.

---

Linnan & Fallon (James D. Linnan, of counsel), Albany, NY, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York, (Gerald W. Connolly, Asst. Attorney General, of counsel), Albany, NY, for Defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On January 6, 2000, plaintiff David Kinzer ("Kinzer" or "plaintiff") commenced the instant action against defendant David Harris ("Harris" or "defendant")[1] pursuant to 42 U.S.C. § 1983, and asserting causes of action for false arrest and malicious prosecution in violation of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and state law.

Harris now moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. Oral argument was heard on April 27, 2001, in Albany, New York. Decision was reserved.

## II. FACTS

This action arises from the arrest and prosecution of Kinzer following an attempt to exchange his valid U.S. Virgin Islands ("U.S.V.I.") driver's license for a New York State driver's license. Plaintiff was arrested because Harris allegedly believed his valid license was a forgery. The following are the pertinent facts as stated in the light most favorable to the non-moving plaintiff.

On or about April 12, 1999, Kinzer entered the New York State Department of Motor Vehicles ("DMV") branch office in Albany, New York. He attempted to exchange his valid U.S.V.I. driver's license for a New York State driver's license. In accordance with DMV procedures, DMV employees compared the license presented by Kinzer with the information contained in the U.S. Identification Manual (the "I.D. manual"). The I.D. manual contains samples and detailed descriptions of driver's licenses issued by each U.S. state and territory. Because the license presented by plaintiff differed substantially from the information contained in the I.D. manual,[2] DMV employees suspected that his license

---

1. Initially, Kinzer also sued Richard E. Jackson, Jr., the Commissioner of the New York State Department of Motor Vehicles ("Jackson"). Jackson was dismissed from this action by stipulation of the parties on January 31, 2001.

2. Kinzer's license appeared to have a purple background, when the I.D. manual indicated that a valid U.S.V.I. license would have a blue background. In addition, the back of Kinzer's license was blank. According to the information contained in the I.D. manual, the back of Kinzer's license should have had a magnetic strip and contained the following preprinted statements: "CAUTION STOP FOR ALL SCHOOL, HC, & SR. CITIZEN BUSES," and "This certificate must be carried while driving. If lost destroyed, or stolen, a duplicate must be obtained at once." The back of Kinzer's license should also have contained instructions to notify the U.S.V.I. DMV of a change of address. (Statement of Material Facts ¶ 22.)

was a forgery. He was told to return on another day to complete the license exchange. The employees' suspicions were reported to DMV Investigative Aide Stanley Bronakowski ("Bronakowski") the next day. (Bronakowski Aff. ¶ 2.)

Because of the concerns about the validity of plaintiff's license, Bronakowski called the U.S.V.I. Department of Motor Vehicles ("U.S.V.I.DMV") on April 13, 1999, to inquire about the validity of Kinzer's license. (Bronakowski Aff. ¶ 5.) He was told by a representative of the U.S.V.I. DMV that they had no record of Kinzer's license in their computers.[3]

On April 15, 1999, Bronakowski was notified that Kinzer had returned to the DMV office to again attempt to exchange his license. (Id. at ¶ 9.) Bronakowski reported this fact to Harris and to DMV Supervising Investigator Brad Schwartz ("Schwartz"). (Id.) Harris, accompanied by DMV Investigator Joseph Cardero ("Cardero"), then traveled to the Albany DMV office to inspect the license proffered for exchange by Kinzer. (Cardero Aff. ¶ 3.) After inspecting the license, and speaking with Schwartz, Harris introduced himself to Kinzer and confirmed that he had attempted to exchange the license in question. (Id. at ¶ 6.) Harris then personally called the U.S.V.I. DMV to again confirm that there was no record of a valid driver's license issued to Kinzer by that agency. (Harris Aff. ¶ 19; Cardero Aff. ¶ 7.)[4]

After completing the call to the U.S.V.I. DMV, Harris called Schwartz to discuss the case. Both Harris and Schwartz determined that probable cause existed for the arrest of Kinzer. (Harris Aff. ¶ 24; Schwartz Aff. ¶ 27.) Harris requested the assistance of a City of Albany police officer to effect the arrest of plaintiff. (Harris Aff. ¶¶ 24, 25; Cardero Aff. ¶ 9.) When the Albany Police officer arrived, he informed Kinzer that he was being arrested for possession of a forged driver's license because the U.S.V.I. DMV had indicated that it did not have a record of his license. (Cardero Aff. ¶ 12.)[5] Plaintiff was taken to the Albany Police Department station and booked. Later that afternoon, he was arraigned before a judge of the Albany City Court on charges of Criminal Possession of a Forged Instrument in the Second Degree in violation of N.Y. Penal Law

3. Bronakowski also alleges that he was instructed to call back in an hour because the representative would check the log books to confirm this fact. (Bronakowski Aff. ¶ 6.) Bronakowski alleges that he called back and was told that there was no record of Kinzer's license in the log books. (Id. at ¶ 7.) Kinzer disputes these allegations. (Pl. Response to Statement of Material Facts ¶ 9.) For purposes of the instant motion, it will be assumed both that Bronakowski was not instructed to call back after a search of the log books and that he was never told that those books contained no record of Kinzer's license.

4. Harris was informed that there was no record of Kinzer's license in the U.S.V.I. DMV's computers. (Harris Aff. ¶ 22.) Kinzer argues that, if Harris had told the U.S.V.I. DMV representative that a computer check had already been conducted, a check of the log books would have been conducted at that time to verify the validity of Kinzer's license. The relevance of this fact, and of Kinzer's arguments relating to other steps Harris could have taken to confirm the validity of Kinzer's license, is discussed below.

5. Kinzer alleges that he spoke with Harris and stated that he was innocent. He also asked Harris whether Harris thought Kinzer was so foolish as to return to the DMV to attempt to reclaim a forged license, when he could simply have taken a driver's test. Kinzer alleges that Harris' response was, in substance, that "nothing you black people do surprises me." There is no dispute that Kinzer protested his innocence at the time of the arrest; however, there is a dispute as to whether Harris made the racial statement. (Cardero Aff. ¶ 14.)

§ 170.25.[6] At the arraignment, Harris spoke with Albany County Assistant District Attorney Francisco Calderone ("ADA Calderone") regarding the facts of the case as Harris then knew them to be. (Harris Aff. ¶ 27.)

On April 20, 1999, Harris received a letter from the U.S.V.I. DMV indicating that Kinzer did, in fact, have a valid U.S.V.I. driver's license, and that the license which Kinzer had attempted to exchange at the DMV was not a forgery. Harris alleges that he unsuccessfully attempted to forward this information to ADA Calderone on several occasions, including hand delivering the information to the Albany County District Attorney's office on or about April 24, 1999. Harris alleges that he assumed that ADA Calderone received this information and dismissed the charges against Kinzer because Harris never heard otherwise. Plaintiff denies the validity of these assertions. He argues that, given the small size of the Albany County District Attorney's office, it is incredible to believe that Harris was unable to deliver the exonerating information to ADA Calderone, and that the evidence indicates that Harris affirmatively misled the prosecutor through omission and inaction concerning the information that he received from the U.S.V.I. DMV. (Pl. Mem. at 18.) [7]

ADA Calderone continued to prosecute Kinzer. Plaintiff was forced to appear in court on seven occasions. (Kinzer Aff.

¶ 37.) In June of 1999, Kinzer attempted to obtain a New York State driver's license by taking the driver's test at the DMV office in Troy, New York. (*Id.* ¶ 42.) After passing the examination, he was informed that there was a hold placed on him in the computer as of April 15, 1999. (*Id.* ¶ 43.) The DMV representative at the Troy office called the DMV main office in Albany. Kinzer was placed on the telephone with Harris, who indicated that he was attempting to help him clear up the matter. (*Id.* ¶ 44.) The charges against plaintiff were finally dismissed on August 24, 1999. This was 126 days after Harris first received confirmation that completely exonerated the plaintiff. The instant action followed.

## III. *STANDARD OF REVIEW*

### A. *Summary Judgment*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

6. N.Y. Penal Law § 170.25 provides: "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10."

7. It would be almost impossible for the plaintiff to have any actual knowledge of the post arrest contacts, if any, between Harris and the District Attorney's Office. However, the District Attorney's file was devoid of a record of any such contacts. This, together with the alleged racial statement and the length of time before the charges were dismissed, is circumstantial evidence that Harris never attempted to convey the exonerating information to ADA Calderone, but rather intentionally withheld the same. In any event, for purposes of this motion, plaintiff's version of the facts must be accepted as true.

(1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

### B. *42 U.S.C. § 1983*

■ To recover damages under 42 U.S.C. § 1983, plaintiff must show that: (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) such "conduct deprived [plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 29–30 (2d Cir.1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

### IV. *DISCUSSION*

■ The dispositive issues in this case are whether or not Harris had probable cause to arrest Kinzer, and whether the failure of Harris to turn over the exonerating information received from the U.S.V.I. Department of Motor Vehicles to prosecutors was sufficient as a matter of law to give rise to a cause of action for malicious

prosecution. Plaintiff's claims for false arrest and malicious prosecution are discussed in turn below.[8]

### A. *False Arrest*

■ The elements of a cause of action for false arrest are (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Kirk v. Metropolitan Transportation Auth.*, 2001 WL 258605, *9 (S.D.N.Y.2001) (citing *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996); *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).[9] The only element at issue in this case is the fourth element.

■ The existence of probable cause to arrest the plaintiff is a complete defense to a claim for false arrest. *Okst*, 101 F.3d at 852. Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir.1999) (quoting *Weyant*, 101 F.3d at 852). The inquiry into the existence of probable cause is an objective one; the subjective beliefs of the arresting officer are irrelevant. *See Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir.2000) (cit-

8. In addition to suing Harris individually, Kinzer also sues Harris in his official capacity. Neither states, nor state officials acting in their official capacity, are considered "persons" under Section 1983; therefore, they cannot be sued under this statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It cannot be disputed that NYS DMV is an

"arm" of the state for purposes of Section 1983 liability. Accordingly, to the extent that Harris is sued in his official capacity, Kinzer's claims must be dismissed.

9. Because false arrest is a type of false imprisonment, the two claims have identical elements. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995).

ing *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).[10]

■ The undisputed evidence in this case is that (1) Kinzer attempted to exchange a license which admittedly did not appear to be a genuine U.S.V.I. driver's license; (2) DMV employees, including Harris, made three calls to the Virgin Islands to confirm that Kinzer was not on record as a holder of a valid driver's license; and (3) that Kinzer admitted to Harris that he was, in fact, attempting to exchange the license at issue for a New York State driver's license. These undisputed facts clearly would give a reasonable police officer probable cause to arrest Kinzer for Criminal Possession of a Forged Instrument in the Second Degree.

Moreover, plaintiff does not seriously dispute these facts. Instead, plaintiff's arguments focus on various additional steps that Harris could have taken to determine Kinzer's innocence. According to plaintiff, the fact that Harris did not take these additional steps demonstrates that he was not motivated by a belief that he had probable cause, but instead was motivated by a desire to find some way to arrest Kinzer. Kinzer argues that this "tunnel vision," (Kinzer Aff. ¶ 25), was the result of Harris' bias against him and that a reasonable officer would not have refused to credit Kinzer's claims of innocence.

■ Kinzer's argument lacks merit. A police officer is not "required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Martinez,* 202 F.3d at 635. Because the objective facts known to Harris at the time of Kinzer's arrest demonstrate that he did have probable cause to effect the arrest of Kinzer, the plaintiff's false arrest claim must be dismissed.

### B. *Malicious Prosecution*

■ Kinzer's second cause of action is for malicious prosecution. The elements of a cause of action for malicious prosecution under both Section 1983 and state law are: (1) the initiation and continuation of a criminal proceeding by the defendant against the plaintiff; (2) lack of probable cause for commencing the criminal proceeding; (3) actual malice; and (4) the termination of the proceeding in favor of the accused. *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994).[11] Viewing the evidence in the light most favorable to Kinzer, a jury could conclude that he has a valid claim for malicious prosecution.

■ While it is true that just as with a claim for false arrest, the absence of probable cause is a necessary element of a claim for malicious prosecution. Defendant argues that because there was probable cause for plaintiff's arrest, this claim must be dismissed. Kinzer argues that regardless of whether or not there was probable cause for the initial arrest, Harris' subsequent receipt of exonerating in-

---

**10.** For this reason, Harris' alleged racial statement is not relevant to the question of whether or not he had probable cause to effect the arrest of Kinzer.

**11.** In addition, there is case law suggesting that plaintiffs bringing such claims must also demonstrate the existence of a post-arraignment deprivation of liberty rising to the level of a Fourth Amendment violation because they are predicated upon a violation of the Fourth Amendment right to be free from un-

reasonable seizure. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir. 1995); *but see Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir.1996) (addressing malicious prosecution claim without reference to requirement of deprivation of liberty). Because Kinzer alleges that he was required to appear in court on seven occasions, and was denied a New York State driver's licence during the pendency of the prosecution, he has alleged a sufficient deprivation of liberty.

formation dissipated whatever cause there may have been at the time of Kinzer's arrest. He cites *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996), in support of this proposition.

*Lowth* stands for the proposition that a police officer can be liable for a claim of malicious prosecution where the officer had probable cause to effect an arrest, but discovered exculpatory evidence prior to the formal charge of the arrestee by the prosecutor or grand jury. *See Lowth*, 82 F.3d at 571–72. Defendant seeks to distinguish *Lowth* on the grounds that it is addressed to the situation where responsibility for the prosecution has not yet shifted to the prosecuting attorney. Because the claim of malicious prosecution at issue in *Lowth* did not involve the intervening acts of a prosecutor, defendants argue that it is not controlling in the instant case.

Notwithstanding the applicability of *Lowth* to the instant case, other cases which have considered the issue of a police officer's liability for malicious prosecution have focused upon the "chain of causation" between the conduct of the officer and the ongoing criminal prosecution. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir.1999). Under this analysis, once an arrestee is formally charged, the arresting officer is generally no longer responsible for the prosecution, and the chain of causation between the officer's conduct and the claim for malicious prosecution is broken by the intervening independent actions of the court or prosecutor. *Id.*

However, the Second Circuit has noted that this result is not inevitable. Where there is evidence that the officer misled or pressured the prosecutor, the officer's subsequent failure to disclose after-acquired exculpatory evidence can support a cause of action for malicious prosecution. *Id. See also Zahrey v. Coffey*, 221 F.3d 342, 351–52 (2d Cir.2000) ("Some courts have sought to resolve the [chain of causation issue] by considering the intervening act of a decision-maker not to be an exercise of truly independent judgment, and therefore reasonably foreseeable, if caused by pressure or misleading information provided by the actor whom the plaintiff seeks to hold liable.") (citing, *inter alia, Townes*, 176 F.3d at 147).

In this case, while there is no evidence that Harris provided false information to ADA Calderone or pressured him to continue the prosecution of Kinzer, a reasonable jury could conclude that, as the officer who commenced the prosecution, Harris' intentional withholding of information that completely and unquestionably exonerated the plaintiff constituted an attempt to mislead ADA Calderone into believing that the charges against Kinzer were valid. Where, as here, there is dispute as to whether Harris made efforts to inform ADA Calderone, or whether he intentionally withheld proof of Kinzer's innocence, there is sufficient basis to submit the question of causation to a jury.

This is particularly true where, as here, the information wholly exonerated the subject of the prosecution. In such a case, a prosecutor could reasonably expect that such information would be immediately provided to him and a jury could find that Harris' failure to do so proximately caused the continued prosecution of plaintiff after the point where it became clear that probable cause for the prosecution had dissipated. Further, it would not be "objectively reasonable" for an arresting officer to intentionally withhold exonerating information from the prosecutor. Thus, defendant is not entitled to qualified immunity.

Moreover, as to this cause of action, the alleged racial statement of Harris is relevant to the question of whether his failure to immediately turn over the exonerating information was motivated by malice. The

alleged racial statements, if proven at trial, would provide a basis for a reasonable jury to conclude that Harris' failure to inform ADA Calderone of Kinzer's innocence was intentional, and motivated by a desire to mislead ADA Calderone into a belief that probable cause existed for the continued prosecution of plaintiff. Accordingly, this claim must not be dismissed.

## V. CONCLUSION

All of plaintiff's claims against the defendant in his official capacity must be dismissed. Moreover, because the defendant did have probable cause to arrest the plaintiff, the false arrest claim must also be dismissed against the defendant in his individual capacity as well. Plaintiff's cause of action for malicious prosecution against Harris in his individual capacity will not be dismissed because as the arresting officer, defendant's intentional withholding of information which completely exonerated the plaintiff is sufficient to sustain such a claim.

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment is GRANTED in part and DENIED in part;

2. The complaint is DISMISSED against defendant in his official capacity.

3. The cause of action for false arrest is DISMISSED; and

4. Defendant's motion is DENIED as to the cause of action for malicious prosecution.

IT IS SO ORDERED.