316 F.3d 139
 David KINZER, Plaintiff-Appellee,
v.
Richard E. JACKSON, Jr., as the Commissioner of the New York State Department of Motor Vehicles, Defendant,
David Harris, Individually and as an Investigator for the New York State Department of Motor Vehicles, Defendant-Appellant.
 Docket No. 01-0157.
 United States Court of Appeals, Second Circuit.
 Argued: June 28, 2002.
 Decided: January 9, 2003.
 
 Dorothy E. Hill, Assistant Solicitor General of the State of New York, Albany, New York (Eliot Spitzer, Attorney General, and Nancy A. Spiegel, Assistant Solicitor General, on the brief), for Defendant-Appellant.
 John Shea, Linnan & Fallon, LLP, Albany, New York (James D. Linnan, on the brief), for Plaintiff-Appellee.
 Before: JACOBS, LEVAL, KATZMANN, Circuit Judges.
 JACOBS, Circuit Judge.
 Plaintiff-Appellee David Kinzer brought suit under 42 U.S.C. § 1983, alleging (inter alia) malicious prosecution against both the Commissioner of the Department of Motor Vehicles ("DMV") of New York State and defendant-appellant David Harris, a DMV investigator. Harris appeals from an order entered in the United States District Court for the Northern District of New York (Hurd, J.) insofar as it denied his motion for summary judgment on the ground of qualified immunity.
 
 
 1
 The district court perceived an issue of material fact as to whether Harris informed the prosecutor that new information received after Kinzer's arraignment demonstrated his innocence, and held that in such circumstances an arresting officer is subject to a claim for malicious prosecution under New York law. The court therefore refused to accord Harris qualified immunity.
 
 
 2
 We reverse because, on the basis of the facts conceded by plaintiff on appeal, Harris advised the district attorney's office that Kinzer's innocence was established and that further prosecution was unwarranted. Whatever duty of notification Harris may have had in the circumstances, he discharged it. There can be no basis for holding him liable.
 
 BACKGROUND
 
 3
 The following facts are undisputed or (where disputed) reflect plaintiff's version of the facts. On or about Monday, April 12, 1999, David Kinzer went to the Albany office of the DMV to obtain a New York State commercial driver's license, invoking New York's reciprocity agreement with the U.S. Virgin Islands, where Kinzer was a licensed driver. However, the Albany DMV employees who examined Kinzer's license determined that it did not match the description and sample of a U.S. Virgin Islands license contained in the U.S. Identification Manual. Suspecting forgery, they withheld issuance of a New York license, told Kinzer there was a problem, and asked him to return at the end of the week. After he left, the DMV employees reported their suspicion to DMV Investigative Aide Stanley Bronakowski, who called the U.S. Virgin Islands DMV and was told that the files and computer database in that jurisdiction contained no record of a license issued to Kinzer.
 
 
 4
 When Kinzer returned to the DMV office on Thursday, April 15, Bronakowski contacted Supervising DMV Investigator Brad Swartz, who assigned Harris, a Senior DMV Investigator, to inspect the license. Someone — Harris or another Albany DMV employee — called the U.S. Virgin Islands DMV and reconfirmed that no valid license had been issued to Kinzer. Having probable cause, Harris arranged for Kinzer's arrest. Later that day, Kinzer was arraigned on a charge of Criminal Possession of a Forged Instrument in the Second Degree, in violation of New York Penal Law § 170.25. At the arraignment, Harris spoke with prosecuting Assistant District Attorney Francisco Calderone, and took down ADA Calderone's office phone and fax numbers. After several hours, Kinzer posted the $1,200 bail and was released.
 
 
 5
 Five days later, on April 20, 1999, Joseph Scarchilli of the Albany DMV received a faxed form from Magdalen Benjamin of the U.S. Virgin Islands DMV certifying that Kinzer had a valid U.S. Virgin Islands driver's license after all. Scarchilli forwarded this document to Harris, who immediately called Benjamin in the Virgin Islands. Benjamin explained that while no record of Kinzer's license had been found in her files or in the database, she eventually found confirmation of Kinzer's license in a log book. Benjamin promised to send Harris a second fax that would confirm that Kinzer had been issued a valid U.S. Virgin Islands driver's license and that all earlier contrary statements had been in error.
 
 
 6
 According to an affidavit Harris submitted in the district court in support of his motion for summary judgment: (1) he called ADA Calderone at least five times between April 20 and April 22 to convey the exculpatory information; (2) he faxed ADA Calderone the exculpatory evidence on the morning of April 21, with a cover sheet stating that Kinzer had a Virgin Islands license and the prosecution should be discontinued; and (3) he hand-delivered a copy of the same materials to a receptionist at the district attorney's office to be forwarded to ADA Calderone.
 
 
 7
 In any event, ADA Calderone either remained unaware of the exculpatory evidence, or neglected to do anything about it, and the charges were still pending in June 1999 when Kinzer went to the DMV in Troy to obtain a New York driver's license (without the aid of reciprocity). The DMV clerk noticed a "hold" on Kinzer's license, called Harris to ask about it, and put Kinzer on the line. Harris said he thought that the charges had been dismissed, and Kinzer advised him otherwise. Harris had the hold immediately removed, and Kinzer was issued his license.
 
 
 8
 The prosecution of Kinzer was dropped in August 1999. Kinzer subsequently commenced this lawsuit under 42 U.S.C. § 1983 charging Harris (and others, who are no longer parties) with false arrest and malicious prosecution, the latter claim premised on the theory that Harris failed to inform the prosecutor of Kinzer's innocence and to take reasonable steps to terminate the prosecution after learning the facts. Harris moved for summary judgment on the basis of qualified immunity.
 
 
 9
 The district court granted Harris's motion with respect to the false arrest claim, finding that Harris obviously had probable cause to arrest Kinzer. Kinzer v. Harris, 146 F.Supp.2d 194, 199 (N.D.N.Y.2001) ("[P]robable cause to arrest ... is a complete defense to an action for false arrest.") (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996)). As to Kinzer's malicious prosecution claim, however, the court found a material issue of fact "as to whether Harris made efforts to inform ADA Calderone, or whether [Harris] intentionally withheld proof of Kinzer's innocence." Id. at 201. The court reasoned that "it would not be `objectively reasonable' for an arresting officer to intentionally withhold exonerating information from the prosecutor," and therefore that Harris was not entitled to qualified immunity on that claim. Id.
 
 DISCUSSION
 
 10
 On appeal, Harris contends that he is entitled to qualified immunity on the malicious prosecution claim because, under New York law and the undisputed facts (or, where disputed, plaintiff's version), he had no clearly established constitutional duty to advise the prosecutor of the information received from the Virgin Islands, and alternatively that it was objectively reasonable for him to believe that his efforts to advise ADA Calderone about the exculpatory evidence were sufficient to meet any legal obligation he might have had.
 
 
 11
 * Kinzer argues that we lack jurisdiction over the district court's interlocutory denial of summary judgment, because "[w]here... resolution of the immunity defense requires the adjudication of issues of fact that are inseparable from the merits, the denial is not immediately appealable." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 214 (2d Cir.2000) (quoting Tolbert v. Queens College, 164 F.3d 132, 138 (2d Cir.1999)).
 
 
 12
 This legal proposition, while correct, see Johnson v. Jones, 515 U.S. 304, 313-18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), is inapplicable here. "Even where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant... contends that he is entitled to qualified immunity even under plaintiff's version of the facts." Coons v. Casabella, 284 F.3d 437, 440 (2d Cir.2002) (quoting Tierney v. Davidson, 133 F.3d 189, 194 (2d Cir.1998)). Harris contends that, even assuming that he did nothing to notify the prosecutor of the newly received information establishing Kinzer's innocence, he cannot be held liable because he was under no clearly established constitutional obligation to notify the prosecutor. This question can be adjudicated without reference to disputed facts. Accordingly, we have jurisdiction to hear the appeal. See Salim v. Proulx, 93 F.3d 86, 90-91 (2d Cir.1996).
 
 II
 
 13
 We review de novo a district court's denial of summary judgment on qualified immunity grounds. Cerrone v. Brown, 246 F.3d 194, 198 (2d Cir.2001); Tellier v. Fields, 230 F.3d 502, 511 (2d Cir.2000). Qualified immunity shields a government employee acting in his official capacity from suit for damages under 42 U.S.C. § 1983, unless the employee's conduct violated clearly established rights of which an objectively reasonable official would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995); see also Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Freedom from malicious prosecution is a constitutional right that has long been clearly established. See, e.g., Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991).
 
 
 14
 To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty. See Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir.1995). To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. See Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir.1996) (citing Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)); Russell v. Smith, 68 F.3d 33, 36 (2d Cir.1995).
 
 
 15
 No doubt, the proceedings against Kinzer terminated in his favor, and the probable cause that existed at the time of his arrest had been nullified by information establishing Kinzer's innocence. The appellate questions are (1) whether Harris had a duty to take steps to terminate the prosecution when he learned the facts that fully exculpated Kinzer; (2) if so, whether he failed to take them; and (3) whether Harris did so out of malice. A malicious prosecution claim can rest on a prosecution that is continued notwithstanding the discovery of information that exculpates the defendant:
 
 
 16
 Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact.
 
 
 17
 Lowth, 82 F.3d at 571 (internal quotation marks and citations omitted).
 
 III
 
 18
 Harris argues that it was not clearly established in 1999 that he could be held liable for malicious prosecution even if he had made no effort to give ADA Calderone the exculpatory information. According to Harris, under New York law in 1999, an officer could be held liable for malicious prosecution only where the probable cause had dissipated prior to the arraignment or commencement of criminal proceedings.
 
 
 19
 We need not analyze New York law on an officer's obligation in 1999 (or now) to convey exculpatory information to the prosecution after criminal proceedings have commenced and the prosecutor has taken control over the case. As a result of a concession made by Kinzer's counsel on appeal, the undisputed evidence demonstrates that Harris informed the ADA of the information establishing Kinzer's innocence.
 
 
 20
 Harris submitted evidence that on April 21 at 7:00 a.m., he received by fax a letter from Magdalen Benjamin of the U.S. Virgin Islands DMV—dated April 20, 1999 — that confirmed the validity of Kinzer's driver's license and explained the mix-up, and that at 9:32 a.m. that day he sent a fax to ADA Calderone consisting of: (1) a hand-written cover sheet with a message regarding Kinzer's license; (2) a copy of the April 20 Benjamin letter; and (3) a printout of an email to his supervisor. Def. Statement Pursuant to Rule 7.1(a)(3) at ¶¶ 41-44. The cover sheet, dated April 21 and signed by Harris, contained the following message:
 
 
 21
 Attached are documents for your review. (1) My supplemental report of the case. (2) Copy of Letter from Virgin Isl. D.M.V. stating that they made the mistake and Kinzer does have a license. (3) Verification letter from Virgin Islands.
 
 
 22
 
 As indicated, with Kinzer having a license from V.I. we are requesting charge be dismissed.
 
 
 
 23
 Any questions/concerns, please call me.
 
 
 24
 (Emphasis added.) The fax log from the New York State DMV Division of Field Operations corroborates Harris's claim as to when the fax was sent: it reflects an outgoing transmission, sometime during the 9:00 a.m. hour on April 21, to the fax number ADA Calderone had given Harris.
 
 
 25
 At oral argument, when asked, Kinzer's counsel conceded he had no evidence suggesting that the handwritten fax cover sheet was a fabrication or forgery, and was not making that contention. Since Kinzer effectively concedes that the cover page is authentic, it is undisputed on this record that Harris sent (at least) the handwritten fax cover sheet, which states that "Kinzer does have a [Virgin Islands] license" and that "with Kinzer having a license from V.I. we are requesting charge be dismissed." See also Pl. Response to Statement Pursuant to Rule 7.1(a)(3), at ¶ 40 (admitting that fax was sent). This undisputed fact suffices to show (at least) that Harris advised ADA Calderone of information establishing Kinzer's innocence. It therefore does not matter whether Kinzer asserts — or the district court found — issues of fact as to the several other steps Harris swore he took to call off the prosecution.
 
 
 26
 Harris made a timely effort to call off the prosecution. He promptly advised ADA Calderone of Harris's innocence on learning the facts and asked that the charges be dropped. Harris has therefore shown that it was objectively reasonable for him to believe that his conduct did not violate any clearly established right of Kinzer. Harris is therefore entitled to judgment dismissing the complaint on the basis of qualified immunity.
 
 CONCLUSION
 
 27
 The judgment of the district court is reversed. The case is remanded with instructions to dismiss the complaint against Harris.
 
 
 28
 JACOBS, Circuit Judge, concurring.
 
 
 29
 I write separately to make an observation that does not bear on the disposition of this appeal, but that seems to me important and germane nevertheless. The circumstances of this appeal required a searching review of the record, from which it has become evident to me that the district court's blanket finding of disputed material facts risked prolongation of a lawsuit against a law enforcement officer whose conduct — on the undisputed record — was, under any standard, exemplary. Qualified immunity is an immunity from suit that should be decided as early as can be, see, e.g., Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), which presumably is why a right of interlocutory appeal is permitted from the denial of a summary judgment motion premised on immunity. See Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). And while we lack power to look behind the denial of such a motion to the extent that the denial is based on a valid finding that material issues of fact are disputed, see Salim v. Proulx, 93 F.3d 86, 90-91 (2d Cir.1996), denial of such a motion on that ground may work a substantial injustice unless it is premised on a thorough review of the record. Freedom from litigation is an important interest that in this instance is easily as important for defendant Harris as for plaintiff Kinzer. That interest should not be discounted. In my view, the district judge inadequately safeguarded a law enforcement officer from prolonged unwarranted litigation.
 
 
 30
 Harris's motion to dismiss on grounds of qualified immunity was backed by categorical affidavits, documents, and corroborative circumstances. This evidence detailed more than a half-dozen efforts by Harris to advise the prosecutor of the exculpatory facts and thus to end the prosecution he was accused of maliciously prolonging. The opinion of the Court relies on one such effort, the April 21 fax, the cover sheet of which unambiguously told the prosecutor that the only evidence supporting probable cause had evaporated. The authenticity of that fax cover sheet is undisputed, as established at oral argument on appeal by a pointed question that elicited a concession that no lawyer could withhold.
 
 
 31
 In addition, however, Harris's motion to dismiss cited to undisputed evidence of several other instances in which he tried conscientiously to end the prosecution. In each instance, this evidence was opposed by nothing more than metaphysical speculation, and yet was unaccountably found by the district court to be disputed.
 
 
 32
 First, Harris's statement pursuant to Local Rule 7.1(A)(3) averred at ¶ 39 that on the morning of April 20, 1999, right after he first learned from Benjamin in the Virgin Islands that Kinzer's license was valid, he tried twice to reach ADA Calderone, leaving messages after being told that Calderone was unavailable. Def. Statement Pursuant to Rule 7.1(a)(3) ("Def. Statement") at ¶ 39. Kinzer's Response to this assertion quibbles without denying the determinative facts; thus, he
 
 
 33
 admits the facts as presented in paragraph # 39, but emphasizes that no calls were made to the ADA before the defendant received further verification from the U.S.V.I. That is[,] defendant allegedly made one phone call to the U.S.V.I. to allegedly form probable cause, but the defendant needs twice as much verification to form the opinion that the charge against the plaintiff should be dismissed.
 
 
 34
 Pl. Response to Statement Pursuant to Rule 7.1(a)(3) ("Pl. Statement") at ¶ 39 (emphasis added). This concession was alone sufficient to show that Harris was entitled to immunity from Kinzer's malicious prosecution suit.
 
 
 35
 Second, Harris averred that he again called ADA Calderone concerning Kinzer on April 21, after receiving Benjamin's faxed letter. Def. Statement at ¶¶ 41-42. Kinzer's response admits that Harris called Calderone twice "on April 21, 1999 at approximately 11:00 am and 2:00 p.m.," Pl. Statement at ¶ 42, denying only that by then Harris had received the faxed letter confirming Benjamin's phone advice — a point that was both immaterial (for reasons shown in the majority opinion), and wholly without record support. See id. at 488. Kinzer's assertion that Harris had not yet received the Benjamin letter was wholly premised on a copy of that letter, annexed to Kinzer's own affidavit, that reflected a re-transmittal to Harris by fax on April 23; from that, Kinzer promoted the non-sequitur (apparently accepted by the district court) that Harris received no copy of the letter until April 23 and therefore could not have faxed it to ADA Calderone on April 21 as he claimed. However, the April 23 transmittal reflected on it face that it was a "refaxing," reinforcing (rather than contradicting) Harris's sworn statement that he received a faxed copy of the same letter on the morning of April 21. Further, the April 23 transmittal on which Kinzer relied in the district court was appended (as "Exhibit G") to his affidavit in opposition to Harris's motion for summary judgment. "Exhibit G" was nowhere referenced in that affidavit, and was therefore no evidence as to anything.
 
 
 36
 Also ignored by the district court were undisputed material facts evidencing a clear absence of malice on Harris's part — an element of Kinzer's malicious prosecution claim.[1] See Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir.1996).
 
 * * *
 
 37
 The opinion of the Court holds that it was objectively reasonable for Harris to believe that his conduct did not violate Kinzer's clearly established right to be free from malicious prosecution. A full review of the undisputed facts reflects that Harris' conduct was commendable. The district court should have ended these groundless and malicious legal proceedings.
 
 
 
 Notes:
 
 
 [1]
 If Harris maliciously intended to suppress the evidence of Kinzer's innocence, he would not have emailed his supervisor, Brad Swartz, on April 20 to advise:
 [u]pon receipt of the letter from Benjamin to this discrepancy [sic], the DA's Office will be contacted, copies provided of the documents from the Virgin Islands for their information. It will be recommended that the charge against Kinzer be withdrawn.
 (Emphasis added). It is undisputed that Swartz forwarded this email to his superior, Skip Dwyer, and sent Dwyer a follow-up email on April 22 stating (inter alia) that "[w]e have notified the Albany Co. DA's office, so the complaint will be withdrawn against Kinzer." Similarly inconsistent with malice are Harris's undisputed efforts to ensure that Kinzer was exonerated after Kinzer told him in June 1999 that the charged had not yet been dropped. Harris avers that on June 22, 1999, after speaking with Kinzer, he happened upon Albany County District Attorney Paul Clyne, filled him in, and asked him to make sure all charges were dropped. Def. Statement at ¶ 55. Kinzer contested these facts on the ground that "there is no indication other than from the defendant himself that the conversation took place." See Pl. Statement at ¶ 55. But Kinzer does not dispute Clyne's subsequent (March 5, 2001) Affidavit confirming Harris's account.