### Caroyl WINN, Plaintiff,

v.

### Shane MCQUILLAN, P.O., Renee Strom, P.O., Anthony Gallo, Eric Brzostek, P.O., Raymond W. Kelly, Commissioner, Jose Chu, Lieutenant, James Paddock, Sergeant, the City of New York, Defendants.

### No. 03 Civ. 2210(VM).

United States District Court, S.D. New York.

Sept. 30, 2005.

Alan D. Levine, Kew Gardens, NY, for Carol Winn, Plaintiff.

Susan P. Scharfstein, New York City Law Dept., New York, NY, for P.O. Shane McQuillan, P.O. Renee Strom, Anthony Gallo, P.O. Eric Brzostek, Commissioner Raymond W. Kelly, Lieutenant Jose Chu, Sergeant James Paddock, and City of New York, Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Caroyl Winn ("Winn"), a New York City Police Officer, filed this action pursuant to 42 U.S.C. § 1983 (§ 1983) against the City of New York (the "City") and the various individual defendants, all of whom are or were at the relevant times officials of the City's Police Department (the "NYPD") (together, "Defendants"). The complaint describes two causes of action. The first claim asserts that Police Officers Shane McQuillan ("McQuillan"), Renee Strom ("Strom"), Anthony Gallo ("Gallo"), and Eric Brzostek ("Brzostek"), and Commissioner Raymond W. Kelly ("Kelly"), Lieutenant Jose Chu ("Chu"), and Sergeant James Paddock ("Paddock") (together, the "Individual Defendants"), in their individual and official capacities, violated Winn's right to due process under the Fourteenth Amendment to the United States Constitution by making false allegations against him, testifying falsely before a Grand Jury and at a jury trial, maliciously prosecuting him, and attempting to deprive him of his employment. The second cause of action, which is pled against Gallo, Brzostek and the City, alleges malicious prosecution under New York state law.

Defendants have filed a motion for summary judgment[1] seeking to dismiss both counts. For the reasons stated below, Defendants' motion is granted.

## I. FACTUAL BACKGROUND[2]

Winn's claims arise from an incident on August 17, 2000 that eventually resulted in Winn's arrest and prosecution in New York state court for reckless endangerment in the second degree. On that date, at approximately 2:30 a.m., Winn and several of his friends arrived by motorcycle at a night club called the Cheetah Club on West 21st Street between Fifth and Sixth Avenues in Manhattan. Winn, who was off duty and not in uniform at the time, and his friends parked their motorcycles across the street from the Cheetah Club.

Shortly thereafter, Strom approached Winn and instructed him to adjust the license plate of his motorcycle. Winn claims that he attempted to explain to Strom that he could not make the requested adjustment to his license plate because he did not have the necessary tool with him at the time. Winn alleges that McQuillan soon approached and ordered

---

1. Defendants Gallo and Paddock also moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6) and defendants McQuillan, Strom, Brzostek, Kelly, Chu and the City moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). In the alternative, all Defendants move for summary judgment under Federal Rule of Civil Procedure 56. The Court treats the motion as one for summary judgment.

2. Unless otherwise indicated, the following factual summary is based on the undisputed factual allegations of the parties set forth in their pleadings, Rule 56.1 statements and papers submitted in connection with the instant motion.

him, in a verbally abusive and physically threatening manner, to remove the license plate.

According to Winn, he and McQuillan "engaged in a conversation ... that at times grew loud" and eventually Winn, admittedly "ignoring an instruction from defendant McQuillan that he not leave the area," mounted his motorcycle and drove away. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment dated October 29, 2004 ("Pl.'s Mem.") at 3.) Winn claims that "[e]ither or both defendant McQuillan and defendant Strom radioed a false report that [he] had struck defendant McQuillan and had either knocked him down or had attempted to run him down." (Id.) It is undisputed that Winn did not identify himself as an NYPD officer at any point during this interaction.

Winn traveled uptown on Sixth Avenue after leaving the scene of the incident involving Strom and McQuillan. Gallo and Brzostek happened to be in their patrol car at the corner of 42nd Street and Sixth Avenue as Winn drove by on his motorcycle. Having heard a radio transmission based on the report concerning the alleged

assault against McQuillan and identifying Winn by his license plate number, Gallo and Brzostek began to follow Winn. They followed him on Sixth Avenue as far north as 56th Street,[3] east on 56th Street and south on Park Avenue, where Winn traveled on the northbound lane, until being instructed via radio to end their pursuit.

In January 2001, McQuillan, Gallo and Brzostek testified before a grand jury regarding these events. The Grand Jury indicted Winn for reckless endangerment in the second degree. In February 2001, Winn was arrested on the basis of this indictment. He pleaded not guilty to the charge against him and was acquitted by a jury on April 3, 2002. After Winn's acquittal, defendants Lieutenant Jose Chu ("Chu") and Sergeant James Paddock ("Paddock") of the NYPD Internal Affairs Bureau, initiated an investigation of the incidents that gave rise to the criminal prosecution. On March 1, 2004, the NYPD Deputy Commissioner of Trials held a hearing regarding the following administrative charges against Winn: (1) that he "did become involved in a verbal altercation with uniformed members of the

---

3. There is some confusion in the record as to whether Winn was in the vicinity of 56th Street or 65th Street when he allegedly drove southbound in the northbound lane of Park Avenue. Winn states, in support of his argument that there was no probable cause to charge him with reckless endangerment, that, while Brzostek testified before the Grand Jury that he had followed Winn as far north as 65th Street, at trial he "had to admit that the tape and the transcript of the radio transmission never made mention of any street higher than 56th Street." (Pl.'s Mem. at 8.) Winn argues, based on this and other purported inconsistencies in certain of the Individual Defendants' testimony before the Grand jury and at Winn's criminal trial, that his "indictment by the grand jury was so tainted by false testimony as to constitute malicious prosecution...." (Id. at 5.) As discussed below, however, the Court bases its determination that there was probable cause for the reckless endangerment charge exclusively on Winn's own admissions, rather than the testimony of any of the Defendants. In addition, also discussed below, the document stating the disposition of NYPD administrative charges that were eventually brought against Winn indicates that he pleaded guilty to the charge of operating "his motorcycle in a reckless manner by driving in excess of the speed limit while traveling southbound in the northbound lane in the vicinity of Park Avenue and East 65[th] Street." (NYPD Disposition of Charges dated May 31, 2004) (attached as Ex. P to Declaration of Susan P. Scharfstein dated September 22, 2004 ("Scharfstein Decl.") at 2.) In any event, this distinction is immaterial to whether probable cause existed with respect to Winn's arrest on a charge of reckless endangerment.

service, did raise his voice and speak in a discourteous manner and did fail to identify himself as a member of the service;" (2) that he "did fail to obey the instruction of Police Officer McQuillan to remain at the scene and did drive away on his motorcycle in a reckless manner;" (3) that he "did fail to stop for officers who were following him in a marked RMP [4] in the vicinity of 6th Avenue and West 42nd Street, and did operate his motorcycle in a reckless manner by improperly changing lanes while traveling in excess of the speed limit;" and (4) that he "did operate his motorcycle in a reckless manner by driving in excess of the speed limit while traveling southbound in the northbound lane in the vicinity of Park Avenue and East 65th Street." (NYPD Disposition of Charges at 1–2.) Winn pleaded guilty to all four charges.[5] As a result, Winn was ordered dismissed from the NYPD, but his dismissal was held in abeyance for one year. In addition, Winn was suspended for 120 days.

## II. *LEGAL STANDARDS*

### A. *SUMMARY JUDGMENT*

In order to prevail on a motion for summary judgment, the moving party must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for sum-

mary judgment should be granted unless the evidence adduced by the non-moving party is "sufficient ... for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

In determining whether genuine issues of material fact exist, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The nonmovant, however, cannot create a genuine issue of fact through "conclusory allegations, conjecture and speculation." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998).

### B. *LIABILITY UNDER § 1983*

Section 1983 creates a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' [t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The Second Circuit has held that "[f]reedom from malicious prosecution is a constitutional right that has long been clearly established." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003)

---

4. Neither of the parties define this term.

5. Winn also pleaded guilty to a charge, unrelated to the instant case, that on October 4, 2000 he "failed to sign out on the return roll call at the end of his tour, as required." (NYPD Disposition of Charges at 2.)

(citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)).

■ "To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty. To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.* (citations omitted).

### III. *DISCUSSION*

Winn has consented to the dismissal of this action as it relates to Kelly, Chu and Paddock. (*See* Declaration in Opposition to Defendants' Motion for Summary Judgment dated October 29, 2004 ("Levine Decl.") ¶ 1.) Accordingly, the Court will address Winn's claims only insofar as they are asserted against McQuillan, Strom, Gallo, Brzostek and the City.

■ It is undisputed that the first two elements of malicious prosecution are satisfied here. Defendants argue, however, that there is no genuine dispute concerning the third element, whether probable cause existed for the proceeding against Winn. "[U]nder New York law, where a warrant has been issued following an indictment by a grand jury, a presumption arises that the defendant acted with probable cause. That rule is inapplicable, however, where ... the warrant is issued by a judge on the basis of the sworn accusations of the defendant in the malicious prosecution action." *Russo v. State of New York*, 672 F.2d 1014, 1018 (2d Cir.1982) (citations omitted). In the instant case, the Grand Jury indictment was based at least in part on the testimony of the same police officers who are defendants in this case. Therefore, the indictment does not give rise to a presumption of probable cause. Accordingly, the Court must consider whether probable cause existed based on the record concerning the events in question.

■ "In general, probable cause to arrest exists when an officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Marshall v. Sullivan*, 105 F.3d 47, 54 (2d Cir.1996) (citations omitted). Because Winn was indicted and prosecuted exclusively for reckless endangerment in the second degree, the Court must examine only whether probable cause existed with respect to that crime.

■ Under New York law, "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Penal Law § 120.20 (McKinney 2005). New York law further provides that "[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. Penal Law § 15.05 (McKinney 2005). Thus, a person is guilty of reckless endangerment in the second degree under New York law if he both engages in conduct

which creates a substantial risk of serious physical injury to another person and is aware of and consciously disregards that risk.

■ Reading the record in the light most favorable to Winn, the Court concludes that no reasonable juror could find that probable cause did not exist with respect to the crime of reckless endangerment. First, as noted above, Winn admitted to the NYPD administrative charges against him of operating his motorcycle in a reckless manner by improperly changing lanes while traveling in excess of the speed limit and by driving in excess of the speed limit while traveling southbound in the northbound lane in the vicinity of Park Avenue and East 65th Street. In addition, Winn admits in his affidavit submitted in connection with the instant motion that he "did exceed the 30 miles per hour speed limit when [Gallo and Brzosteck] were following [him] in their vehicle." (Affidavit of Caroyl Winn dated October 27, 2004 ("Winn Aff.") ¶ 9.) While Winn claims that he does "not believe [he] ever went faster than 50 miles per hour," he does not squarely deny having driven his motorcycle at a speed of up to fifty miles per hour. Thus, there is no dispute that Winn drove his motorcycle at a speed in excess of thirty miles per hour and up to fifty miles per hour while traveling southbound in a northbound lane of Park Avenue.

Winn himself has acknowledged that this conduct was reckless. The Court further finds that no reasonable juror could conclude that Winn's reckless conduct did not create a substantial risk of physical injury to another person and that a police officer witnessing such conduct would not have sufficient cause to arrest the offender. Although Winn's conduct occurred at approximately 2:30 a.m., a time when fewer pedestrians, cars, motorcycles or bicycles are likely to be on the street than at other times, in fact there are few times, if ever, when a central thoroughfare of midtown Manhattan such as Park Avenue would be so desolate as not to present a substantial risk from the driving and traffic offenses to which Winn pleaded guilty. Thus, even at 2:30 a.m. there was a sufficient likelihood that the area in question would be populated to the extent that Winn's recklessness created a substantial risk of serious physical injury to others. As evidence of the potential dangers, Winn recounted in his testimony at the NYPD administrative hearing what appears to have been a near collision. He testified as follows:

> When I became aware [that] someone was behind me was when I crossed over to the . . . northbound side and proceeded southbound. As I turned to get back into the correct side of the street, I noticed the RMP behind me, a block behind me. I made the decision to cross over into . . . the northbound side, because there was a car coming on my side of the street. It was a decision, a split second decision, that I chose to do that. It was an avoidance of the car that was coming directly at me on my side.

(Tr. at 61–62.)

Based on Winn's admissions to having driven in a reckless manner and the location in which that reckless conduct occurred, the Court concludes that no reasonable juror could find that probable cause did not exist for a reasonable police officer to believe that Winn committed the crime of reckless endangerment.

Winn argues that "[t]he factual dispute in this action is too great to permit a grant of summary judgment to defendants." (Pl.'s Mem. at 14.) All of the disputes that Winn cites in support of this claim, however, pertain to facts that are not material to the issue of whether probable cause existed for the police officers to believe that

Winn committed the crime of reckless endangerment. Winn acknowledges that he "was indicted for reckless endangerment in the second degree ... arising from the portion of the incident where he was followed, while driving his motorcycle, by defendants Gallo and Brzostek." (Compl. ¶ 36.) Because Winn was not prosecuted for any crime other than reckless endangerment, and because the acts underlying that charge occurred only during the portion of the incident during which Winn was being followed by Gallo and Brzostek, disputes concerning other portions of the incident in question are immaterial to the claim of malicious prosecution.

Winn attempts to link the portion of the incident in question that preceded the events giving rise to the reckless endangerment charge to those events by claiming that, if McQuillan had not reported on his radio that "he had been run down or had been the victim of an attempted run-down ... there never would have been any charge of reckless endangerment." (Pl.'s Mem. at 7.) The question before the Court, however, concerns only whether probable cause existed to believe Winn committed the crime of reckless endangerment, regardless of what may have caused Winn to engage in the offense. Therefore, the circumstances leading up to the chase during which Winn admitted to engaging in reckless conduct are immaterial to his claims for malicious prosecution. Therefore, Winn's claims of malicious prosecution, under both § 1983 and New York law, must be dismissed.

■ Winn's § 1983 claim also must be dismissed to the extent that it is based on the assertion that certain of the Individual Defendants "made false allegations against him, testified falsely before a Grand Jury and at a jury trial ... and are attempting to deprive him of his employment." (Compl. ¶ 41.) Although the Complaint alleges that these acts violated his right to due process under the Fourteenth Amendment, Winn does not offer any argument in support of the claim that he has a Fourteenth Amendment right not to be the subject of allegedly false testimony or false allegations. While the claim that one has been the subject of false testimony or false allegations may constitute a component of an action for malicious prosecution, the Court is aware of no authority for the proposition that such a claim, standing alone, implicates a constitutionally protected right. *See Skalaban v. Department of Children and Families*, 314 F.Supp.2d 101, 110 (D.Conn.2004) (finding that "the mere act of making false statements in a neglect petition" against a father by a state child welfare agency where there is no "allegation indicating actual interference with the custody of a child" does not give rise to a Fourteenth Amendment cause of action.).

■ Finally, Winn's § 1983 claim must be dismissed to the extent that it is based on the allegation that the Individual Defendants "are attempting to deprive him of his employment" in violation of the Fourteenth Amendment. The Court interprets this to be a procedural due process claim. Winn has not, however, specifically claimed that he has not been afforded due process with respect to the possible loss of his employment. On the contrary, the record reflects that Winn was provided with ample process at the NYPD hearing, where Winn was represented by counsel and voluntarily pleaded guilty to the charges against him. *See Schwartz v. Brown*, 857 F.Supp. 291, 296 (S.D.N.Y. 1994) (Noting that, under the due process clause of the Fourteenth Amendment, " [t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to pres-

ent his side of the story.'") (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Accordingly, Winn's § 1983 claim based on the alleged attempt by the Individual Defendants to deprive him of his employment also must be dismissed.

## IV. *CONCLUSION*

For the reasons stated above, it is hereby

**ORDERED** that the Defendants' motion for summary judgment as to all of the Plaintiff's claims in this action is GRANTED; and it is further

**ORDERED** that the Complaint in this action is hereby dismissed in its entirety.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**